## LESLIE v. EBNER, ADMINISTRATOR.

[No. 10,014. Motion to dismiss overruled October 25, 1917. Opinion filed March 1, 1918.]

1. EXECUTORS AND ADMINISTRATORS.—*Claims Against Estate.*—*Practice.*—*Motion for New Trial.*—*Statute.*—Under §2843 Burns 1914, Acts 1883 p. 156, providing that the trial of claims filed against decedents' estates shall be conducted as in ordinary civil cases, the rules of procedure in civil causes should be followed where applicable, so that motions for new trial are contemplated as in civil causes. p. 36.

2. APPEAL.—*Bond.*—*Time for Filing.*—*Statute.*—Under §2978 Burns 1914, Acts 1913 p. 65, relating to appeals and providing that an appeal bond must be filed within thirty days after the decision complained of, the time begins to run from the rendering of final judgment. p. 36.

Leslie *v.* Ebner, Admr.—67 Ind. App. 32.

3. EXECUTORS AND ADMINISTRATORS.—*Claims Against Estate.—Time for Taking Appeal.*—In civil causes, which include trials of claims against decedents' estates, the thirty days after decision for filing an appeal bond, as provided by §2978 Burns 1914, Acts 1913 p. 65, begins to run from the time of overruling the motion for new trial when filed after the rendering of judgment. p. 36.

4. APPEAL.—*Filing Transcript.—Time.*—Under §2978 Burns 1914, Acts 1913 p. 65, relating to appeals from decisions growing out of matters connected with decedents' estates and providing that the appeal bond shall be filed within thirty days after judgment and the transcript within ninety days after filing the appeal bond, where one whose interests are adverse to the estate prosecutes an appeal, he is entitled to 120 days from the rendering of final judgment within which to file his transcript in the appellate tribunal, although the appeal bond may have been filed within less than the thirty days; and an administrator, even though not required to furnish an appeal bond, has the same period of time in which to file the transcript on appeal. p. 37.

5. APPEAL.—*Briefs.—Defects.—Necessity of Objections.—Statute.*—Under §3 of the act of 1917, Acts 1917 p. 523, requiring appellee, within fifteen days after the time for filing appellant's brief has expired, to file objections to the record and briefs, pointing out wherein the rules of court have not been complied with, and providing that failure to do so is a waiver of defects, where appellee did not file objections, the court is authorized to examine the record, including the evidence, to determine the merits of the appeal, though appellant has not complied with the rules of court in that his statement of the evidence consists largely of conclusions with nothing to indicate the source of such evidence, and his points and authorities consist largely of abstract propositions of law. p. 40.

6. CORPORATIONS.—*Stock Subscription.—Collateral Agreements.—Effect.*—An agreement made by one selling shares of corporate stock that, if the notes given for the stock were paid by the maker, the amount thereof shall be repaid out of the first dividends declared and that dividends declared on the stock of the company's financial agent might be appropriated for that purpose, did not amount to an agreement that the notes should be treated as a mere loan of the maker's credit, and that they should be required to be paid only from dividends. p. 40.

7. BILLS AND NOTES.—*Promissory Notes.—Actions.—Defenses.—Fraud.—Burden of Proof.*—In an action on a promissory note, where defendant alleged that the execution of the note was procured by fraud, he had the burden of proof on that issue. p. 41.

8. CORPORATIONS.—*Stock Subscriptions.*—*Fraud.*—*Evidence.*—*Sufficiency.*—In an action on promissory notes given in payment of a stock subscription in a mining company where defendant alleged that the execution of the notes was procured by fraudulent representations by the corporation's financial agent that the company owned valuable mining properties in Mexico, evidence showing that at the time the notes were executed the company had acquired valuable mining properties in Mexico and that it thereafter extended its holdings until it owned five mines, that it had, under the supervision of its engineers, constructed substantial buildings, installed machinery, had done considerable work at a large expense in developing the mines, and partially completed a wagon road to a railroad connection twenty miles away, that the mines had actually produced a large amount of ore bearing gold, silver, iron and copper in paying quantities, and that, until the company was forced to suspend operations because of a civil war in Mexico, its property was of the value of several million dollars, is insufficient to show that the representations alleged were false and fraudulent. p. 41.

9. EVIDENCE.—*Admissibility.*—*Documentary Evidence.*—*Identification.*—It is improper to admit in evidence written communications in the form of exhibits where they are not sufficiently identified. p. 44.

From Daviess Circuit Court; *James W. Ogdon,* Judge.

Action by Frank W. Leslie on a claim against Lawrence A. Ebner, administrator of the estate of Joseph L. Ebner, deceased. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Milton S. Hastings, Josiah G. Allen, Arthur W. Allen, William H. Dailey* and *Clem V. Hoke,* for appellant.

*L. E. Ritchey,* for appellee.

CALDWELL, J.—Appellant has appealed from a judgment rendered against him on a claim filed against the estate of appellee's decedent. Appellee moves to dismiss the appeal. The facts are as follows: Judgment was rendered on December 23, 1916. Appel-

lant's motion for a new trial was overruled on February 24, 1917, and thereafter on that day he filed his appeal bond. The transcript was filed in this court on June 18, 1917. This court did not extend the time within which to file the appeal bond. It appears then that the appeal bond was not filed within thirty days after the judgment was originally rendered. It appears also that the transcript was not filed within ninety days after the filing of the bond, or within 120 days after the judgment was originally rendered, but that it was filed within 120 days after the overruling of the motion for a new trial. The parties agree that §2978 Burns 1914, Acts 1913 p. 65, governs respecting both the time within which and the manner of perfecting the appeal. Literally that section is to the effect that the appeal bond must be filed within thirty days after the decision complained of, in the absence of an extension of time granted by the appellate tribunal, and that the transcript must be filed within ninety days after the filing of the bond. Appellee contends that December 23, 1916, the day on which the judgment was originally rendered, marks the beginning of the time limited for the filing of the bond, and that consequently it was not filed within the thirty-day period. Appellant, however, insists that the overruling of the motion for a new trial, where that event is subsequent to the original rendering of judgment, is the beginning of the period so limited, and consequently that the bond was filed in time. It is appellee's second contention that in any event the filing of the bond is the beginning point of the time within which the transcript must be filed, and that it must be filed within ninety days thereafter, while appellant argues that under the statute the rendering of the final judgment, in this case the overruling of the motion for a

new trial, sets to run the time within which both the bond and the transcript must be filed, and that the former must be filed within thirty days and the latter within thirty days plus ninety days, or 120 days thereafter. It will be observed that here the bond was filed on the day on which the motion for a new trial was overruled, and the transcript was filed 114 days thereafter. We proceed to consider the various arguments advanced by the parties to support their respective contentions:

Section 2843 Burns 1914, Acts 1883 p. 56, provides in substance that the trial of claims filed against decedent's estates shall be conducted as in

1. ordinary civil cases. It follows that where the statute does not specify the practice in the trial of such claims, the rules of procedure in civil causes should be followed where applicable. *Goodbub* v. *Estate of Hornung* (1891), 127 Ind. 181, 26 N. E. 770. It results that in trials of claims filed against decedent's estates, motions for a new trial are contemplated as in civil causes. *Boots* v. *Griffith* (1883), 89 Ind. 246; *McConahey's Estate* v. *Foster* (1898), 21 Ind. App. 416, 52 N. E. 619; *Lester* v. *Lester, Exr.* 1880), 70 Ind. 201; Henry, Probate Law §§274, 284.

While, literally, §2978, *supra,* is to the effect that the appeal bond must be filed within thirty days after the "decision" complained of, the rendering of

2. the final judgment in fact marks the beginning of such time. *Galentine* v. *Brubaker* (1896), 147 Ind. 458, 46 N. E. 903.

In civil causes where the filing of a motion for a new trial is subsequent to the rendering of the

3. judgment, the time specified by statute for taking an appeal begins to run from the time

of overruling the motion. *Blaemire* v. *Barnes* (1909), 173 Ind. 657, 91 N. E. 232.

It follows that February 24, 1917, rather than December 23, 1916, is the date from which must be counted the time granted by §2978, *supra,* within which to file the appeal bond. The bond was filed on that day, and consequently within time. The transcript was filed 114 days thereafter, and consequently within 120 days after the overruling of the motion for a new trial, but not within ninety days after the filing of the appeal bond. Where the party whose interests are adverse to the estate prosecutes an appeal under §2978, *supra,* the courts hold, apparently in conflict with the literal reading of the section, that he is entitled to 120 days from the rendering of the final judgment within which to file his transcript in the appellate tribunal, although the appeal bond may have been filed within less than the thirty days specified. *Thomas* v. *Davis, Admr.* (1916), 64 Ind. App. 378, 115 N. E. 961; *Simons* v. *Simons* (1891), 129 Ind. 248, 28 N. E. 702. See, also, *Lindley* v. *Darnall, Admr.* (1899), 24 Ind. App. 399, 56 N. E. 861; *Vail* v. *Page* (1910), 175 Ind. 126, 93 N. E. 705.

The holding is the same where an administrator of an estate appeals, he not being required to file an appeal bond. *Willis* v. *Ferguson* (1916), 62 Ind. App. 563, 111 N. E. 810. See, also, *Crittenberger* v. *State, etc., Trust Co.* (1916), 63 Ind. App. 151, 114 N. E. 225.

Motion to dismiss is overruled.

OPINION ON MERITS.

CALDWELL, J.—Appellant filed in the clerk's office of the Knox Circuit Court a claim in five paragraphs

against the estate of Joseph L. Ebner, deceased, appellee's decedent. Each paragraph of the claim was based on a promissory note purporting to have been executed by decedent to Charles P. Reiniger, and indorsed by the latter and also by the Reiniger Mining and Smelting Company by its treasurer, Joseph H. Brant. The first of these notes was dated December 23, 1913, the next three, March 2, 1914, and the remaining one June 20, 1914. By their terms they matured as follows, respectively: January 1, March 2 and September 2, 1915, April 10, 1916, and August 1, 1915. They were given for the following respective amounts: $500, $750, $750, $1,000 and $1,000. The form of each of the notes was such as to constitute it a negotiable instrument under the Uniform Negotiable Instruments Act (Acts 1913 p. 120, §9089a *et seq.* Burns 1914). Each paragraph of the claim alleged in substance that, before the maturity of the note upon which such paragraph was predicated, Reiniger indorsed it for value to the Reiniger Mining and Smelting Company, and that the latter before its maturity indorsed it for value to appellant. The claims having been disallowed were transferred for trial, and by regular proceedings were thereafter venued from the Knox Circuit Court to the Daviess Circuit Court. In the latter court appellee filed an amended answer in four paragraphs, and to the following effect: First, general denial; second, that the Peoples Savings Bank, of Van Wert, Ohio, rather than appellant, was the real party in interest; third, no consideration, and that appellant took the notes with notice; fourth, that Reiniger procured the execution of the notes by false and fraudulent representations, and that appellant took with notice. The reply

was a general denial. A trial resulted in a finding and judgment in favor of appellee.

Appellant questions the sufficiency of the evidence. It therefore becomes necessary to outline more fully the fourth paragraph of answer. Although not directly alleged, it is a fair inference from this paragraph that the notes were given in consideration of certain shares of the capital stock of the Reiniger Mining and Smelting Company issued to decedent. The fraudulent representations by virtue of which it is alleged that the execution of the notes in suit was procured were to the following effect: That said company was the owner of certain rich and valuable mines in the State of Sonora, Mexico, and that in and about such mines there was mineral ore ready for the market of the value of $2,000,000; that the capital stock of the company was principally owned by Reiniger himself, and would yield enormous dividends to the stockholders in the near future. It is alleged that such representations were false and fraudulent, and that by reason of them decedent was induced to execute the notes in suit, and that neither such mining property nor the capital stock of the company was, or had been at any time of any value. It is alleged also that as a further inducement to the execution of such notes Reiniger agreed with decedent that the dividends arising from the operation of the mines should meet and pay the notes as they severally matured, and that the execution of such notes should be treated as a loan of the credit of decedent in the promotion of the mining enterprise, and to the end that dividends arising therefrom could and would pay said notes. As we have said, it is alleged also that appellant took the notes with knowledge of the facts.

Appellee insists that appellant has not complied

with the rules of this court, in that his statement of the evidence consists largely of conclusions, with nothing to indicate the source of such evidence; and also in that his points and authorities consist largely of abstract propositions of law, and that therefore nothing is presented for our consideration. Appellee in the main is correct in his contention. However, this appeal is governed by the act of 1917 (Acts 1917 p. 523). Under §3 of that act it is made the duty of an appellee, within fifteen days after the time for filing the appellant's brief has expired, to file in the office of the clerk of this court his objections to the record and briefs, pointing out wherein he believes the rules of this court have not been complied with; and his failure so to do is a waiver of any defects in the record or briefs. Under the circumstances, we are authorized to, and in this case have, examined the record in order that we might determine the merits of this appeal, including the evidence, the sufficiency of which we proceed to consider.

We fail to discover any evidence sustaining the allegation that as an inducement to the execution of the notes Reiniger agreed that the transaction wherein such notes were executed should be treated as a mere loan of the credit of the decedent, and that such notes should be required to be paid only from dividends declared on the capital stock, and arising out of the profits from the operation of the mines. Whatever the evidence discloses respecting such an agreement was embodied in certain receipts signed by Reiniger at the time of the execution of some of the notes in suit, and acknowledging the receipt of such notes in consideration of certain shares of the capital stock of the mining com-

pany delivered to Ebner, and to the effect that the notes being paid, the amount thereof paid by decedent should be repaid to him out of the first dividends declared by said company, and that dividends declared on Reiniger's stock might be appropriated for that purpose. The receipts were to the effect that on the payment of the notes by Ebner, and on the declaring of dividends on Reiniger's stock, such dividends should be used to repay Ebner, and Ebner should hold the stock in consideration of his having advanced the amount of money represented by the notes for the use of the company in developing the property. The evidence does not disclose any breach of such agreement, for the reason, as hereinafter indicated, that no dividends have been declared on the capital stock of the company.

Respecting the alleged fraudulent representations, it may be said that there was abundant evidence that Reiniger represented to decedent that the company was the owner of a number of valuable mining properties in the State of Sonora, Mexico. The burden was on appellee to prove the fraud alleged. A very careful study of the record fails to disclose any evidence that such representations were either false or fraudulent.

In a general way the further and uncontradicted evidence was to the following effect: Prior to the execution of the notes in suit, Reiniger acquired certain mining properties in the State of Sonora, Mexico. Thereafter and before the execution of the notes, the Reiniger Mining and Smelting Company, a foreign corporation, was organized with a nominal capital stock of 2,000,000 shares of one dollar each, about $900,000 of which was held by Reiniger. Thereafter the company acquired other

mining properties in the state of Sonora, until it held and owned five mines, some of which to an extent had been worked before either Reiniger or the company acquired them. An early arrangement was made by which Reiniger was constituted the financial agent of the company, and as such was authorized to sell stock at twenty-five cents on the dollar, receiving cash for the company, or taking notes in his own name for the company and to be transferred to it. At different times, as indicated by the dates of the notes in suit, Ebner purchased the stock of the company through Reiniger or his representative, and executed such notes therefor, his holdings as represented by such notes being 16,000 shares, which he or his estate still holds and owns. There was no evidence that such stock had been tendered to the company. In purchasing such stock and executing such notes, although there is no direct evidence to that effect, it is a fair inference that he was induced to do so by representations made by Reiniger that the mining properties owned by the company were exceedingly rich and valuable. These mines were situated several hundred miles from the United States border, and twenty miles from a railroad. At the time of the execution of these notes the company had in mind to complete a wagon road from the mines to the railroad connection for the transportation of machinery and materials to the mine, and the mine products to the railroad, a considerable part of the construction of which road had been completed. The company had employed in and about the mines at different times from fifteen to 125 men, the number at any particular time depending on the ability to supply food and other materials; and had in its employ and actually at work at the mine engineers, assistant engineers and superintendents, who

were receiving substantial salaries. It had constructed substantial buildings, installed machinery, had done considerable work in developing the mines, and had spent in the mining operations something like $60,000, aside from the road construction. There were many tons of ore that had been actually mined ready for transportation, some of which had been mined by this company, and the rest by those who had worked the mines at an earlier day. This ore was of a nature to produce minerals in paying quantities. The minerals consisted of gold, silver, iron and copper. The company had established at the mine its own assay plant, and tests of the mining products disclosed that they were ore bearing in paying quantities. By the testimony of persons apparently competent to speak it appeared that the mineral producing rock that had been actually removed from place was of the value of several million dollars. On account of civil war in Mexico, which eventually spread to and over the state of Sonora, culminating in President Wilson's advice that all Americans leave Mexico, the company was compelled to suspend operations in 1915. As we have said, the evidence showed that at the time Ebner executed the notes in suit, this company's property was of the value of several million dollars, and that such value would have continued had conditions remained normal, and that, even taking into consideration the unsettled situation in Mexico, such property was of the value of something like $100,000 after the company was compelled to suspend operations, and that at the time of the trial the company had a substantial accumulation of cash, besides securities owned by it, derived from the sale of corporate stock.

Under such circumstances it is only by speculation

that we would be able to hold that the evidence showed such representations to be false and fraudulent. Although the real facts may be otherwise than as indicated by the evidence, we are impressed that the officers and members of the company believe that the mining properties are intrinsically of great value, and that such value might be translated into tangible profits, were it not for the unfortunate conditions existing in Mexico.

Before the maturity of the notes, the company desired to create a fund to be used in the purchase of additional machinery to be installed at the mines, and to that end the company borrowed $20,000 on notes signed by the company and certain of its officers and members, and which loan was negotiated through appellant, and also sold the notes in suit to appellant, he paying face value therefor. The fraud not having been proved, it is not necessary for us to consider whether appellant's title is characterized by the elements that constitute a good-faith holding. The evidence failed to establish that appellant is not the real party in interest. We are required to hold that the evidence was insufficient to sustain the finding.

It is urged, also, that the court erred in admitting in evidence defendant's exhibits from one to twenty-five inclusive. These exhibits for the most part 9. consisted of what purported to be written communications from Reiniger to Ebner. Without taking these exhibits up in detail, it is sufficient to say that a number of them were not sufficiently identified to render them properly admissible in evidence.

No question is presented respecting the burden of allegation and proof of the elements of a good-faith holding, where the suit is by an endorsee immediate

or remote against a maker of a negotiable instrument, and where the defense is fraud or illegality, and also where it is want or failure of consideration. On that question, see *First Nat. Bank, etc.* v. *Ruhl* (1890), 122 Ind. 279, 23 N. E. 766; *Harbison* v. *Bank, etc.* (1867), 28 Ind. 133, 92 Am. Dec. 308; *Giberson* v. *Jolley* (1889), 120 Ind. 301, 22 N. E. 306; *Union Trust Co.* v. *Adams* (1913), 54 Ind. App. 166, 101 N. E. 741; *Bunting* v. *Mick* (1892), 5 Ind. App. 289, 31 N. E. 378, 1055; *Bright Nat. Bank* v. *Hartman* (1915), 61 Ind. App. 440, 109 N. E. 846; *Galvin* v. *Meridian Nat. Bank, etc.* (1891), 129 Ind. 439, 28 N. E. 847; *Boxell* v. *Bright Nat. Bank* (1915), 184 Ind. 631, 112 N. E. 3. See, also, §9089d1 *et seq.* Burns 1914, Acts 1913 p. 120, 126.

Judgment reversed, with instructions to sustain motion for a new trial, and with permission to reform the pleadings if desired.

Note.—Reported in 117 N. E. 511, 118 N. E. 829. Corporations: distinction between subscriptions for stock and offers or agreements to subscribe therefor, 81 Am. Dec. 392.