**D. H., Petitioner-Appellant,**

v.

**J. H., Respondent-Appellee.**

No. 1–880A208.

Court of Appeals of Indiana, First District.

March 30, 1981.

Eric N. Allen, Free, Brand, Tosick, Van Winkle & Allen, Greenfield, for petitioner-appellant.

RATLIFF, Judge.

## STATEMENT OF THE CASE

D. H. (wife) appeals from that portion of the decree of dissolution of marriage entered by the trial court which awarded the care and custody of the three minor children of the parties to J. H. (husband). We affirm.

## STATEMENT OF FACTS

The parties, D. H. (wife) and J. H. (husband) were married on September 10, 1966, and separated on November 1, 1979. They are parents of three children, namely: D., an eleven year old daughter; J. D., a nine year old son; and J. J., an eight year old son. Wife filed her petition for dissolution of marriage on January 8, 1980 and the decree of dissolution which, *inter alia* awarded custody of the children to husband with specified visitation privileges granted to wife, was entered on March 22, 1980.

Much of the testimony at the trial involved the alleged homosexual relationship of wife and two young ladies, K. B. and K. R. Wife was never asked, either on direct or cross-examination, about her homosexual activities with K. B. or K. R., or either of them. However, both K. B. and K. R. testified that they had engaged in homosexual activity with wife. In addition, certain greeting cards and letters from K. B. and

K. R., as well as from another young woman, K\_\_\_\_, and being husband's exhibits H through S, both inclusive, were admitted in evidence over wife's objection. Further, presumably to support an inference of a homosexual relationship between wife and K. B., husband testified that he observed the two of them swimming nude in the parties' pool. These occasions were late at night when the children were in bed. Husband also testified concerning an occasion when wife and K. R. were hugging each other in wife's home and introduced into evidence photographs which he took of this activity. It was not established that the children were present, husband testifying that they were probably outside.

K. R. was permitted to testify, over wife's objection, that the daughter of the parties told her that her mother (wife) and K. B. were always in bed together hugging each other. This statement is the only evidence of any alleged sexual misconduct occurring in the presence of any of the children.

The evidence was in conflict concerning the quality of care and degree of attention given to the children by the parents, as well as to the adequacy of housekeeping standards. Wife's evidence portrayed a mother actively participating in sports activities with her children, helping them with schoolwork, preparing meals, doing laundry, taking them to church, and taking them for necessary tutoring and therapy. However, wife's evidence did indicate wife was not a model housekeeper in that dishes were left unwashed in the sink, and laundry was left lying on furniture rather than put away. Wife's evidence presented a father who had little concern for his children, who did not do necessary home maintenance, and who was ill-tempered.

On the other hand, husband's evidence portrayed a father who prepared meals for his children because their mother was out running around, helped children with lessons, took them to tutors and therapy sessions, and generally was a concerned parent. Husband's evidence further showed that wife left dirty dishes lying around until food particles on the dishes molded. Also, wife often did laundry only when a particular item of clothing was needed and left laundry on the furniture instead of putting it away. Further testimony indicated that one room in the house was full of papers and debris to the point of rendering the room unusable.

Based upon this evidentiary background, the trial court entered the dissolution decree awarding custody of the three minor children to the husband. Wife appeals from the custody award.

### ISSUES[1]

1. Did the trial court indulge in an improper presumption in favor of the husband concerning custody of the children because of the wife's homosexuality?

2. Was it error for the court to admit, over objection, evidence of wife's homosexual activities, since such activities are not one of the statutory criteria for determining child custody?

3. Was admission in evidence, over objection, of respondent's (husband's) Exhibits H through S, reversible error?

4. Was it reversible error to admit into evidence, over objection, the testimony of K. R. concerning statements made by D., the parties' daughter, and by another female acquaintance of wife?

5. Was the awarding of custody of the children to the husband an abuse of the court's discretion?

### DISCUSSION AND DECISION

Before proceeding with our discussion and decision on the specific issues raised in this appeal, we note that the appellee (husband) has not favored us with an appellee's brief. In such a case, wife (appellant) may prevail by making a *prima facie* showing of reversible error. *Costanzi v. Ryan*, (1978) Ind.App., 370 N.E.2d 1333; *Michels v. Young Metal Products, Inc.*, (1971) 148 Ind.App. 502, 267 N.E.2d 572,

1. We have restated and renumbered the issues in the interest of clarity.

*trans. den.; Wertzberger v. Herd,* (1957) 128 Ind.App. 85, 146 N.E.2d 115.

*Issues One and Two*

█ Wife first contends the trial court indulged in an improper presumption in favor of husband in awarding custody of the children to him in violation of the statutory admonition that custody shall be determined in accordance with the best interests of the child with no presumption favoring either parent. Ind.Code 31–1–11.5–21. Wife says the court presumed husband to be the proper custodian of the children because of her alleged homosexuality. We believe wife misconstrues the statutory provision that "[i]n determining the best interests of the child, there shall be no presumption favoring either parent." IC 31–1–11.-5–21. The purpose of this statutory provision prohibiting such presumptions is to overcome the effect of decisions in some old cases holding that "[t]he father has the legal right to the custody of his children, unless it is clearly shown that he is unfit . . .", *Conn v. Conn,* (1877) 57 Ind. 323, or the maternal preference rule followed in many cases wherein the mother has been given preference particularly as to custody of children of tender years or female children. 24 Am.Jur.2d *Divorce and Separation,* § 785 (1966); Annot., 70 A.L.R.3d 362 (1976).[2] In other words, the statutory prohibition proscribes the awarding of custody to one parent simply because the court presumes one parent to be the better custodian of the children, *e. g.,* giving custody to the father because it is his right, or giving custody to the mother merely because of the maternal preference rule. Wife fails to demonstrate that the court indulged in any such forbidden presumption. Rather, she says the trial court presumed the husband to be the proper person to have custody of the children because of her alleged homosexuality. What wife really is doing is saying the court erred in basing its custody decision upon her homosexuality because that alone is an insufficient basis for the custody decree.

The issue of the wife's homosexual activity is central to these two issues. We must, therefore, determine whether or not homosexuality of a parent renders such parent unfit *per se* to have custody of his or her children. Wife directs our attention to the statutory criteria to be considered by the court in determining custody. IC 31–1–11.5–21(a) provides:

"(a) The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:

(1) The age and sex of the child;

(2) The wishes of the child's parent or parents;

(3) The wishes of the child;

(4) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) The child's adjustment to his home, school and community; and

(6) The mental and physical health of all individuals involved."

Wife argues that there is neither statutory nor case law in Indiana making homosexual activity a criteria for determining child custody, and that such activities are not specified as one of the statutory criteria in IC 31–1–11.5–21. Thus, she says, it was error to admit any evidence of her homosexual activities.

█ To the extent wife relies upon the lack of a specific reference to homosexuality of a parent in the statutory criteria for determining custody found in IC 31–1–11.5–21, she misinterprets the statute. The criteria listed there are not exclusive. The statute enjoins the court to "consider *all relevant factors* including" the six specified criteria. IC 31–1–11.5–21. Consideration

---

**2.** *The annotation cited traces the development and modern status of the maternal preference rule.*

of *all relevant factors* is not limited to those specifically enumerated.

 In deciding these issues raised by wife we must, of necessity, deal with the question of the relevance of the evidence of wife's homosexual activity. Wife contends since there was no competent evidence of any such activity in the presence of the children, evidence of her homosexual behavior was irrelevant and inadmissible. We disagree. It has been held that marital misconduct, including adultery, is a pertinent although not controlling factor in determining which of the parents should be awarded custody of the children. *Tapal v. Tapal,* (1969) Tex.Civ.App., 448 S.W.2d 560; *Claughton v. Claughton,* (1977) Fla.App., 344 So.2d 944. *See also: DiStefano v. DiStefano,* (1978) 60 A.D.2d 976, 401 N.Y.S.2d 636 (holding that while the sexual life style of a parent may be considered in custody cases, such consideration must be limited to its effect upon the welfare of the children). *But see: J. B. v. A. B.,* (1978) W.Va., 242 S.E.2d 248 (to the effect that unless the divorcing mother's sexual indiscretions are so outrageous as to reflect upon her capacity to raise the children, isolated acts of sexual misconduct are not relevant evidence as to fitness of the mother). Thus, we believe the evidence of wife's homosexual conduct in this case was relevant and admissible.[3] The question remains whether such evidence is controlling in a custody determination.

 Many cases have dealt with the issue of the effect of heterosexual misconduct of a parent upon that parent's fitness to have the care and custody of the minor children. In *Buchanan v. Buchanan,* (1971) 256 Ind. 119, 267 N.E.2d 155, our Supreme Court reviewed a case in which custody had been awarded to an adulterous wife. The court stated that the best interest of the children is the controlling factor in custody determinations and added at 256 Ind. 125, 267 N.E.2d 155:

"[T]he guilt or innocence of either parent is not a controlling factor in determina-

tion of the child's custody and ... the trial court may, in its sound discretion, award custody to the party against whom the divorce was decreed. *Guilt of adultery does not automatically disqualify the guilty party from having custody of the children."* (Emphasis added.)

In *McMurray v. McMurray,* (1936) 210 Ind. 595, 598, 4 N.E.2d 540, our Supreme Court said: "A mother, as well as a father, may sometime [sic] sin; she may break the Sixth Commandment, but this fact alone, as a matter of law, does not necessarily make her an unfit and improper person to have the custody of her child." *See also: Lucas v. Lucas,* (1949) 119 Ind.App. 360, 86 N.E.2d 300, *trans. den. Cf.: Ecker v. Ecker,* (1975) 163 Ind.App. 339, 323 N.E.2d 683, (affirming the awarding of custody to the father where in addition to the mother's illicit sexual relationship with a man, the evidence disclosed neglect of children, bizarre conduct of the mother, and that mother had threatened suicide.) Cases from other jurisdictions also support the general rule that an adulterous parent is not automatically deprived of any right to custody merely because of the adultery. To deprive a parent of custody because of sexual misconduct, the misconduct must be shown to have an adverse effect upon the welfare of the children. *Burris v. Burris,* (1979) 70 Ill. App.3d 503, 26 Ill.Dec. 810, 388 N.E.2d 811; *Claughton v. Claughton, supra; Tapal v. Tapal, supra.* 24 Am.Jur.2d, *Divorce and Separation,* § 788 (1966); Annot., 23 A.L. R.3d 6 (1969). Therefore, had the evidence in this case established extramarital heterosexual activity of the wife, that standing alone, would not have constituted sufficient grounds for denying her custody of her children.

We turn now to a consideration of whether or not homosexual activity of the wife requires an award of custody of the children to the husband. Cases involving lesbian mothers are few, partly because of the reluctance of the courts to discuss such a sensitive issue and partly because of the

---

**3.** In *Shaw v. Shaw,* (1973) 159 Ind.App. 33, 304 N.E.2d 536, this court indicated that evidence of the mother's adultery four years earlier was not irrelevant.

hesitancy on the part of the homosexual parent to reveal sexual preference for fear of retaliation by employers and public disapproval. R. Rivera, *The Legal Position of Homosexuals*, 30 Hast.L.J. 799 (1979). (The Rivera article, at 883–904, reviews cases, both reported and unreported, involving homosexual parents, primarily lesbian mothers, and custody matters.) A consideration of some representative cases involving homosexual mothers and child custody leads us to the conclusion that the same rule applies as in the case of the adulterous mother.

*Bezio v. Patenaude*, (1980) —— Mass. ——, 410 N.E.2d 1207, dealt with a mother's petition to remove a guardian and to restore custody of her children to her. The trial court found that the mother's intention to raise the children in a lesbian household created an environment which would adversely affect the children. In *Bezio*, uncontradicted expert testimony was presented at trial that a parent's sexual preference *per se* is irrelevant to a consideration of that parent's ability to provide necessary love, care, and attention to the child. In reversing the trial court, the Supreme Judicial Court of Massachusetts stated at 410 N.E.2d 1216:

> "A finding that a parent is unfit to further the welfare of the child must be predicated upon parental behavior which adversely affects the child. The State may not deprive parents of custody of their children 'simply because their households fail to meet the ideals approved by the community ... [or] simply because the parents embrace ideologies or pursue lifestyles at odds with the average.' ... In the total absence of evidence suggesting a correlation between the mother's homosexuality and her fitness as a parent, we believe the judge's finding that a lesbian household would adversely affect the children to be without basis in the record. This is not a matter about which the judge could take judicial notice. 'Matters are judicially noticed only when they are indisputably true. ... Judicial notice is not to be extended to personal observations of the judge. ...'" (Citations omitted.)

In *Nadler v. Superior Court*, (1967) 255 Cal.App.2d 523, 63 Cal.Rptr. 352, the trial court found that the homosexuality of the mother as a matter of law rendered her unfit to have the care and custody of the minor child. On appeal, the court said the trial court erred in that it failed to exercise its discretion in determining the best interest of the child when it held as a matter of law that the mother was unfit because she was a homosexual.

In *Hall v. Hall*, (1980) 95 Mich.App. 614, 291 N.W.2d 143, the court held the wife's homosexuality was properly considered as one factor in determining moral fitness. The evidence in *Hall* showed that given a conflict the mother would unquestionably choose her lesbian relationship over her children. Thus, the court affirmed the award of custody to the father.

An award of custody to the father was upheld in *DiStefano v. DiStefano, supra*, where the wife acknowledged that she was a lesbian and the evidence established an ongoing lesbian relationship with another woman in the mother's home. The trial court had found that her homosexuality *per se* did not render her unfit, but nevertheless awarded custody to the father. The court heard testimony from the parties, clergymen, psychiatrists, psychologists, an anthropologist, a probation officer, and a social worker. The appellate division held that the court's decision reasonably could be read to conclude that the wife's conduct in failing to keep her lesbian relationship separate from her role as a mother had had, and predictably would have, a detrimental effect upon the children.

In another New York case where the mother was carrying on a homosexual relationship in the apartment where the child lived, the court found that living with her mother in such an environment was not in the best interests of the child. Custody was awarded to the father and the mother's visitation privileges were restricted to prohibit any contact between the child and homosexuals. *In re Jane B.*, (1976) 85 Misc.2d 515, 380 N.Y.S.2d 848.

*Kallas v. Kallas* (1980) Utah, 614 P.2d 641, reversed an order granting overnight visitation to a lesbian mother who also formerly had had a drug problem. The reversal was predicated upon the trial court's refusal to admit certain evidence. However, the Utah Supreme Court did say at 614 P.2d 645:

> "Although a parent's sexuality in and of itself is not alone a sufficient basis upon which to deny completely a parent's fundamental right, the manifestation of one's sexuality and resulting behavior patterns are relevant to custody and to the nature and scope of visitation." (Citation omitted.)

■ Although these cases reveal some divergence of viewpoint on the question of homosexuality of a parent as affecting fitness to have custody of the child, we believe the proper rule to be that homosexuality standing alone without evidence of any adverse effect upon the welfare of the child does not render the homosexual parent unfit as a matter of law to have custody of the child. Since, in this case, there was no properly admitted evidence of any homosexual activity of wife in the presence of the children,[4] and no evidence of any adverse effect on the children of her homosexuality, the court's award of custody to the father cannot be upheld solely upon that basis. However, as we will demonstrate later in this opinion, the decision of the trial court awarding custody to the father can be supported on other grounds. Consequently, even if the trial court was wrong in its opinion on the issue of the effect of the wife's homosexuality as it affected the custody question, such error was not reversible error.

*Issue Three*

Wife next contends the court erred in admitting into evidence respondent's (husband's) Exhibits H through S, both inclusive. Husband testified that he found these exhibits packed in a box in the parties' bedroom. Exhibit H was a poem written on notebook paper and was unsigned. Exhibit I was a letter from K____; Exhibits J, K, L, M, were greeting cards either from K. B. or K. R. Exhibit O was a card signed "with love, Boogie Man." Exhibit P was a card from K____; Exhibits Q and R were letters from K____. Exhibit S was a greeting card and photograph from K. R. Wife objected to the introduction of these exhibits on the grounds of improper foundation, improper identification, and relevancy.

■ The cards from K. R. and K. B., both of whom have the same first name, were signed only by the first names. Husband testified he knew two girls with that first name. From other evidence in the record, it is apparent these cards were from K. B. and K. R. since photographs of them were included in one card each. (Exhibits J and S). Husband also testified he knew two girls named K____. They were not further identified, and it is not possible to tell from the record which K____ sent the letters in question. Wife contends the lack of authentication and identification of these letters rendered them inadmissible. Exhibits which are not sufficiently identified are not admissible in evidence. *Leslie v. Ebner*, (1918) 67 Ind.App. 32, 118 N.E. 829. A letter alleged to have been received from a particular source is not admissible until its authenticity, identity, and genuineness have been sufficiently shown. 13 I.L.E. *Evidence*, § 163 (1959) 29 Am.Jur.2d *Evidence*, § 879 (1967). However, we need not decide whether these exhibits were properly admitted, since no harm was done by admitting them.

At most, the cards from K. B. and K. R. would tend to support an inference of some homosexual relationship between either of them and wife. Since both K. B. and K. R. testified to such a relationship, the cards from them are merely cumulative at best. Erroneous admission of inadmissible evidence is not grounds for reversal where such evidence is merely cumulative in nature. *Haskett v. Haskett*, (1975) 164 Ind. App. 105, 327 N.E.2d 612, *trans. den; Cof-*

---

4. Our reasons for stating there was no properly admissible evidence of wife's homosexual activity in the presence of the children are set forth in our discussion of Issue Four.

fey v. Wininger, (1973) 156 Ind.App. 233, 296 N.E.2d 154, trans. den. Also, this case was tried by the court. The harm arising from evidentiary error is lessened if not totally annulled when the trial is by the court sitting without a jury. Loman v. State, (1976) 265 Ind. 255, 354 N.E.2d 205; King v. State, (1973) 155 Ind.App. 361, 292 N.E.2d 843. The trial judge is presumed to know the intricacies of the rules of evidence and to consider the evidence in that light, ignoring the extraneous, incompetent, and irrelevant. It is only when the trial judge's judgment has apparently or obviously been infected by erroneously admitted evidence that we will set it aside. King v. State, supra. Here, the cards from K. B. and K. R. were, at most, only cumulative of properly admitted evidence. The letters from K____, in our opinion, contain nothing damaging to wife. Under such circumstances, assuming arguendo, the admission of the exhibits was improper, we cannot say the judgment was apparently or obviously infected thereby.

*Issue Four*

This issue involves a consideration of the often cited Patterson rule. Patterson v. State, (1975) 263 Ind. 55, 324 N.E.2d 482. Here, wife contends that the admission of certain hearsay evidence was reversible error. At trial, husband argued that such evidence was admissible under Patterson and the trial court obviously agreed.

Specifically, wife challenges the admission of testimony by the witness K. R. concerning two out-of-court statements made to her by K. B. and by D., the parties' ten year old daughter. In the first instance K. R. testified that K. B., in a conversation at K. B.'s house, told her that K. B. and wife were gay. Wife's counsel objected in these words: "Objection to that again based on State vs. Cummings, and other, ..." Husband's counsel responded that K. B. had been subpoenaed and was sitting in the hall. The court overruled the objection to the question and allowed the foregoing answer. Later, K. B. testified. During this testimony K. B. admitted that she had engaged in homosexual acts with wife. K. B. was never questioned about the alleged conversation with K. R.

In the second instance, K. R. was permitted to testify over wife's objection asserting hearsay, none of the parties were present, no foundation, and lack of relevancy or materiality, that in an out-of-court statement in the summer of 1979, D., the parties' daughter, had told her that D.'s mother and K. B. were always in bed together with their arms around each other, hugging each other. D. was never called as a witness by either party.

In order to resolve this issue we must examine the Patterson rule. In Patterson, certain witnesses were confronted, on cross-examination, with statements which these witnesses had made out of court. Our Supreme Court repeated the standard definition of hearsay evidence as "testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of the matters asserted therein, *and thus resting for its value upon the credibility of the out-of-court asserter.*" (Original emphasis.) 263 Ind. at 56–57, 324 N.E.2d 482. Our Supreme Court then held that since the witnesses were present in court, testified, and were subjected to cross-examination, the statements were admissible both for impeachment and as substantive evidence.

The Patterson rule has been defined recently in Smith v. State, (1980) Ind.App., 400 N.E.2d 1137, 1141:

"Briefly stated, the Patterson rule is that a prior statement of a witness is admissible, not only for purposes of impeachment, but also as *substantive evidence*, provided the out-of-court asserter is present at trial for cross-examination." (Citations omitted, original emphasis.)

However, we do not believe the rule to be as broad as might be indicated in that definition, if by this definition nothing more is required than the mere presence of the out-of-court declarant. We have reviewed a number of cases wherein the Patterson rule was relied upon and find the common factor in those cases was that the out-of-court declarant had in fact testified and

been subjected to cross-examination. *Riddle v. State* (1980) Ind., 402 N.E.2d 958; *Brown v. State* (1979) Ind., 390 N.E.2d 1000; *Gutierrez v. State,* (1979) Ind., 386 N.E.2d 1207; *Thompkins v. State* (1978) Ind., 383 N.E.2d 347; *Buttram v. State,* (1978) 269 Ind. 598, 382 N.E.2d 166; *Williams v. State,* (1978) 269 Ind. 193, 379 N.E.2d 449; *Stone v. State,* (1978) 268 Ind. 672, 377 N.E.2d 1372; *Rogers v. State,* (1978) 268 Ind. 370, 375 N.E.2d 1089; *Johnson v. State,* (1978) 268 Ind. 55, 373 N.E.2d 169; *Flewallen v. State,* (1977) 267 Ind. 90, 368 N.E.2d 239; *Carter v. State,* (1977) 266 Ind. 196, 361 N.E.2d 1209, *cert. den.* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142; *Stewart v. State,* (1977) Ind.App., 368 N.E.2d 253; *Floor v. State,* (1977) Ind.App., 360 N.E.2d 1273; *Wheeler v. State,* (1976) 168 Ind.App. 50, 341 N.E.2d 202; *Lloyd v. State,* (1975) 166 Ind.App. 248, 335 N.E.2d 232, *trans. den.* (1976); *Rieth-Riley Construction Co. v. McCarrell,* (1975) 163 Ind.App. 613, 325 N.E.2d 844.

Several recent cases have warned against the danger of unwarranted extension of the *Patterson* rule, and have attempted to define the limits of the rule. In *Samuels v. State,* (1978) 267 Ind. 676, 372 N.E.2d 1186, 1187, Justice Prentice writing for our Supreme Court said:

"It appears that the rule drawn from *Patterson* may well be in need of reconsideration. To the extent that it has, on some occasions, been used to support the admission of out-of-court statements as a mere substitute for available in-court testimony, it has been misapplied."

Justice DeBruler speaking for our Supreme Court in *Stone v. State, supra,* 377 N.E.2d at 1375, stated:

"Most recently in *Samuels v. State,* (1978) Ind., 372 N.E.2d 1186, this Court condemned unjustifiable extensions of the *Patterson* rule and warned that the use of prior statements of a trial witness by the proponent of the witness in lieu of available and direct testimony of such

witness will not [sic] longer be sanctioned."

However, in *Stone* the court found no misapplication of the rule. This court has also warned against unjustifiable enlargement of the rule in *Smith v. State,* (1980) Ind. App., 400 N.E.2d 1137, 1141, where Judge Buchanan said:

"In cautioning against over-extensions of *Patterson,* our Supreme Court has warned that the exception must not be used as 'a mere substitute for available in-court testimony.' *Samuels v. State, supra.*"

█ In *Carter v. State,* (1980) Ind.App., 412 N.E. 825, (transfer pending), this court in an opinion by Judge Staton said there were certain foundational prerequisites to be met before applying the *Patterson* rule. Those requirements are that the out-of-court declarant must first testify, be confronted with the statement while on the witness stand, and cross-examined concerning them.[5] *Carter, supra.* However, in *Carter,* the out-of-court declarant later testified, admitted making the statements, and was cross-examined about them. Thus, according to *Carter,* the error in not first meeting the foundational requirements was cured.

█ It is clear, we think, that what was done here resulted from a misapplication and over-extension of the *Patterson* rule. The statements of K. B. and D. to which K. R. testified were clearly within the classic definition of hearsay previously quoted. The statements of the out-of-court declarants were clearly offered for the truth of the facts stated and rested for their value on the credibility of the out-of-court asserter. It is equally clear that the out-of-court statements were used as a substitute for direct in-court testimony in clear contravention of the admonitions against such practice in *Stone, Samuels,* and *Smith.* Therefore, we believe the testimony of K. R. as to the out-of-court statements of K. B. and D. was not within a proper application

**5.** Judge Hoffman concurred in result only in *Carter* because he did not "adhere to the narrow application placed on the principle enumerated" in *Patterson* by the majority. 412 N.E.2d at 833.

of the *Patterson* rule and was inadmissible hearsay.

 The next question is whether or not the improper admission of the out-of-court statements was reversible error. The objection made to the first of the statements was, in our opinion, nothing more than a general objection. Any error as to the admission of this statement was therefore waived. Assuming a proper objection, however, admission of the first statement was not error. As we have previously pointed out, K. B. testified concerning her homosexual relations with wife. The erroneous admission of hearsay evidence which is merely cumulative of other properly admitted evidence is not error. *Haskett v. Haskett, supra; Coffey v. Wininger, supra.* Further, as we also pointed out in our discussion of Issue Three, this was a trial by the court sitting alone without a jury. The rule stated in *Loman v. State, supra* and *King v. State, supra,* and our reasons based thereon which we stated in our discussion of Issue Three apply with equal force here. No reversible error resulted from the admission of these statements.

*Issue Five*

Wife contends the trial court in awarding custody of the children to the husband abused its discretion because the custody determination was not sustained by the weight of the evidence.

 It is clearly established law in Indiana that child custody shall be determined according to the best interests of the child, and it is within the discretion of the trial court to award custody of children consistent with their best interests. An award of child custody will not be reversed unless a manifest abuse of discretion is shown. *Schwartz v. Schwartz,* (1976) 170 Ind.App. 241, 351 N.E.2d 900; *Shaw v. Shaw,* (1973) 159 Ind.App. 33, 304 N.E.2d 536. To constitute an abuse of discretion, the trial court's decision must be clearly against the logic and effect of the facts and circumstances before the court. *Schwartz v. Schwartz, supra; Shaw v. Shaw, supra.* It is likewise clear that on an appeal from a custody award we will not reweigh the evidence or substitute our judgment for that of the trial court. *Buchanan v. Buchanan, supra.* Wife cites *In re Marriage of Myers,* (1979) Ind.App., 387 N.E.2d 1360, as authority for the proposition that an appellate court can weigh the evidence in reviewing a custody award. We do not read *In re Myers* to permit us to reweigh the evidence and substitute our judgment for that of the court below. To the extent that *In re Myers* might arguably lend support to allowing us to reweigh the evidence, we decline to follow it. (*See* dissenting opinion of Judge Hoffman in *In re Myers.*)

 Here, there was evidence which, if believed by the trial court, would support the award of custody to the father irrespective of any evidence of wife's homosexuality. The evidence concerning wife's lack of proper housekeeping standards, that ˙husband fixed meals for the children because wife was out running around, and that husband assisted children with lessons are all relevant factors which the court could consider and which would support the decision. The trial judge is in a position to see the parties, to observe their conduct and demeanor, and to hear them testify. *Lucas v. Lucas,* (1949) 119 Ind.App. 360, 86 N.E.2d 300, *trans. den.* We do not judge the credibility of these witnesses, that being the exclusive prerogative of the trial judge. It is our duty, on appeal, to affirm the judgment of the trial court if it can be sustained on any legal basis which the evidence supports. *Rees v. Heyser,* (1980) Ind.App., 404 N.E.2d 1183; *Berrey v. Jean,* (1980) Ind. App., 401 N.E.2d 102; *Ertel v. RCA,* (1976) 171 Ind.App. 51, 354 N.E.2d 783. We find no abuse of discretion and no reversible error. Consistent with our duty in such a case, we affirm the judgment below.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.