DIANA LYNN SHAW *v*. LARRY J. SHAW.

[No. 2-1072A85. Filed December 21, 1973.]

*Stephen B. Caplin, Caplin & Levinson,* of Indianapolis, for appellant.

*John L. Fox,* of Indianapolis, for appellee.

### CASE SUMMARY

BUCHANAN, P.J.—Plaintiff-Appellant Diana Lynn Shaw (Diana) appeals from a divorce decree in favor of Defendant-Appellee Larry Shaw (Larry) granting him custody of their minor child, claiming error in the admission of certain evidence and in refusing to grant a new trial based upon newly discovered evidence and abuse of discretion in awarding custody.

We affirm.

### FACTS

The facts most favorable to Larry as Appellee are:

On September 8, 1970, Diana, a grade school teacher, filed a Complaint against Larry for divorce in which she sought custody of Danny, their two-year-old child.

On September 29, 1970, Larry counterclaimed for divorce and contested the custody issue, claiming that Diana was not a fit person to have care and custody of Danny.

An agreement was entered into by Larry and Diana on October 8, 1970, by the terms of which Diana retained custody

of Danny pending outcome of the litigation and Larry was given visitation privileges with Danny away from Diana.

The trial commenced on March 8, 1972 and lasted for three days over a period of two weeks with numerous witnesses appearing for each side. Among other things, Diana charged Larry with being interested in another man, job rotation, and writing bad checks.

While the evidence was conflicting, the trial court's decree is supported by the following evidence bearing upon Larry's fitness to have custody:

1. At the time of the trial, Larry resided with his parents on the family farm in Illinois, where he was employed by his father to help in expanding a livestock trucking business.

2. If custody were awarded to Larry, Danny would accompany Larry to the farm and reside with him there along with other members of the family. In addition to the supervision provided by Larry, Danny's paternal grandparents would exercise continuous care and supervision over him.

3. Danny would have his own room on the farm. In addition, he would receive regular religious training at a church attended by the family for many years. When he reached school age, Danny would attend a nearby school and would be transported there by his grandfather, who drove a school bus.

4. While Larry had various employments, he supported his family.

Evidence was also presented which related to Diana's unfitness to have custody:

1. Over Diana's objection, a typewritten statement (Exhibit 1 herein), bearing a signature which Larry identified as Diana's, was admitted into evidence. In this statement, Diana purportedly relinquished all rights as a parent to Danny and swore that she was not a

capable and fit mother to raise a child. In this document she also purported to sign away all her rights of custody to Larry. The statement was executed some seventeen months before the divorce action was filed.

2. In the fall of 1969, Diana had expressed approval of the use of LSD and on two occasions was observed by Larry smoking marijuana cigarettes.

3. In November of 1969 (less than one year before the divorce action was filed), Diana made plans to travel with two male companions to Chicago, and showed affection for these two men in the presence of Larry and his family.

4. In the spring of 1970, Larry observed Diana sexually molesting Danny in the bedroom of their home.

5. In August, 1970, less than one month before the parties separated, Diana traveled to Bloomington, Indiana, and lived with three men in an apartment for two weeks while she attended classes at Indiana University.

6. Also in August of 1970, after Diana had returned from Bloomington, she was discovered by Larry in the company of a nude man in the bedroom of their home.

7. On August 10, 1971, Diana was arrested for, and admitted, driving eighty-seven miles per hour with Danny in the automobile.

8. Approximately one year after the divorce action was filed, and while Danny was temporarily visiting Larry on the farm in Illinois, Diana and a male companion with whom she was traveling were arrested and charged with criminal property damage and disturbing the peace in connection with an altercation which took place at the Illinois farm. Diana threw rocks at the house, broke windows, physically assaulted Larry and threatened to kill him.

No objection was made by Diana to any evidence prejudicial to her, except as to Exhibit 1.

On April 25, 1972, the trial court entered a decree granting Larry the divorce on his counterclaim and awarding him custody of Danny. Limited visitation rights were granted to Diana.

On June 26, 1972, Diana filed her Motion to Correct Errors and requested a new trial on the ground of newly discovered evidence.

This "evidence" consisted of an opinion letter sent to Diana's attorney by a staff counselor for the Domestic Relations Counseling Service, Inc. and was written approximately two months after the decree was entered. In this letter, the counselor concluded that Larry was not fit to have custody of Danny, a conclusion based on conversations which the counselor had with Diana and persons who knew Larry between 1968 and 1972.

Affidavits accompanying the Motion showed that the counselor had been retained by Diana prior to entry of the decree, and that he had unsuccessfully attempted to confer with Larry before trial.

Diana's Motion to Correct Errors was overruled by the trial court. She appeals.

## ISSUES

Disposition of this appeal poses these issues:

ISSUE ONE.     Did the trial court abuse its discretion in awarding custody to Larry because some unfavorable evidence relating to Diana's unfitness as a mother concerned events occurring many months prior to trial?

ISSUE TWO.     Was Exhibit 1 (Diana's typewritten acknowledgment of unfitness and relinquishment of her rights to custody) erroneously admitted into evidence because it was not relevant to the issue of her fitness as a mother?

ISSUE THREE. Did the trial court err in refusing to grant Diana a new trial based upon the existence of the opinion letter as newly discovered evidence?

As to ISSUE ONE, Diana contends that the trial court could only consider evidence bearing upon her misconduct or unfitness contemporaneous with or at the time of the trial itself, and that because no such contemporary evidence was presented the trial court abused its discretion in awarding Larry custody.

Larry contends that the trial court remained free to review and weigh all the evidence presented on the question of Diana's fitness, including evidence which described events which took place prior to trial.

As to ISSUE TWO, Diana contends that Exhibit 1, which was executed almost three years prior to the time of trial, was too remote to have any bearing upon her fitness at the time of trial, and therefore should have been excluded as irrelevant.

Larry argues that Exhibit 1 was highly relevant to the question of Diana's fitness to have custody. He contends that the remoteness factor did not affect the exhibit's admissibility, only its weight.

As to ISSUE THREE, Diana claims that the opinion letter satisfied all of the requirements of newly discovered evidence as a basis for granting a new trial.

In response, Larry contends that the opinion letter could have been made available at trial.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that the trial court did not abuse its discretion in awarding custody of Danny to Larry because there was sufficient and substantial relevant evidence bearing upon Diana's unfitness as a mother and

Larry's fitness as a father to justify the court's judgment in the best interests of the child.

To prevail in this appeal Diana, as an appellant, has a long hill to climb because she must demonstrate abuse of judicial discretion by the trial court:

> "The disposition of children is not controlled by hard and fast rules of law but by the exercise of the sound judicial discretion of the court confronted with the problem. *Review by an appellate court of such disposition is limited to the question of abuse of judicial discretion.*" (Emphasis supplied.) *Gilchrist* v. *Gilchrist* (1947), 225 Ind. 367, 372, 75 N.E.2d 417, 419.

Abuse of discretion is defined in *McFarlan* v. *Fowler Bank City Trust Co.* (1938), 214 Ind. 10, 14, 12 N.E.2d 752, 754:

> "An abuse of discretion is an erroneous conclusion and judgment, *one clearly against the logic and effect of the facts and circumstances before the court,* or the reasonable, probable, and actual deductions to be drawn therefrom." (Emphasis supplied.) *See also, DuFour* v. *DuFour* (1971), 149 Ind. App. 404 at 410, 273 N.E.2d 102 at 106 (dissenting opinion).

Merely to recite the evidence in this case favorable to the trial court's judgment foreshadows an obvious conclusion. There was more than ample evidence supporting the logic of awarding custody to Larry to raise Danny in the stable environment of the farm home of Larry's parents. Particularly is this so in view of evidence indicating emotional instability, drug abuse, sexual promiscuity, and other instances of misconduct on Diana's part.

Diana's claim that some of the damaging evidence against her was too remote for the trial court's consideration is of no avail because all such evidence was admitted without objection on her part (except as to Exhibit 1, discussed separately in ISSUE TWO). Having failed to object at trial, she is precluded from attacking the trial court's consideration of this evidence on appeal. *Dale* v. *Trent* (1970), 146 Ind. App. 412, 256 N.E.2d 402.

Had she objected to the relevancy of evidence indicating misconduct on her part occurring months or even years before trial, child custody is too important to impose hard and fast rules on the trial court's discretionary powers to decide which facts should or should not be considered:

> "In cases of divorce, which result in the breaking up of the home, the law commits to the care of the court, in a measure, the safety and welfare of the children.
>
>       \*    \*    \*
>
> *This duty is imposed independent* of the wishes of the parents, and independent *of any issues they may make in the pleadings, as to their fitness or unfitness for such custody.*
>
>       \*    \*    \*
>
> *Whatever, therefore, is competent evidence to enlighten the judgment of the court as to the fitness and qualification of the parties for the care and custody of the children, the court may and should hear in decreeing a divorce."* (Emphasis supplied.) *DuBois* v. *Johnson* (1884), 96 Ind. 6, at 9-10. *See also, Gilchrist* v. *Gilchrist, supra.*

Diana's reliance on *Lucas* v. *Lucas* (1949), 119 Ind. App. 360, 86 N.E.2d 300, is misplaced. While the court in that case noted that the mother's misconduct (adultery) took place four years prior to trial, there was no suggestion that such prior misconduct was irrelevant as a matter of law and could not be considered by the trial court. After summarizing evidence of the father's unfitness, relating to events as remote as *five years* prior to trial, the court concluded, as we conclude too:

> "From an examination of the record it seems that there is *ample and sufficient substantial evidence to sustain the decision* of the trial court  \*  \*  \*." (Emphasis supplied.) 119 Ind.App. at 367, 86 N.E.2d 303.

## ISSUE TWO.

CONCLUSION—It is our opinion that Exhibit 1 (Diana's written acknowledgment of unfitness) was properly admitted as relevant evidence bearing on the issue of custody.

Diana's contention that her prior acknowledgment of unfitness (Exhibit 1) executed three years prior to trial is too remote for consideration as to her present fitness, fares no better than other unfavorable evidence originating months or years before trial. Her written acknowledgment of unfitness executed seventeen months prior to filing the divorce action was relevant "to enlighten the judgment of the court as to the fitness and qualification of the parties for the care and custody" of one of the parents of Danny. *DuBois* v. *Johnson, supra, Lucas* v. *Lucas, supra.*

The decision to exclude evidence as remote is largely within the discretion of the trial court, to be disturbed on appeal only when a clear showing of abuse of discretion is demonstrated. *State* v. *Lee* (1949), 227 Ind. 25, 83 N.E.2d 778.

The trial court properly exercised its discretion.

ISSUE THREE.

CONCLUSION—It is our opinion that the trial court did not err in refusing to grant a new trial on the basis of the opinion letter offered as newly discovered evidence by Diana.

*Kelly* v. *Bunch* (1972), 153 Ind. App. 407, 287 N.E.2d 586, summarizes a litigant's burden in seeking a new trial because of newly discovered evidence:

"A motion for a new trial based on *newly discovered evidence should be received with great caution and the alleged evidence should be carefully scrutinized.* The newly discovered evidence must be material, and must be more than just cumulative or impeaching. The party seeking a new trial because of newly discovered evidence must show that *the evidence is such that it could not have been discovered before the trial by the exercise of due diligence,* and must show that the evidence is such that it would reasonably and probably result in a different verdict. *The granting of a new trial because of newly discovered evidence is a matter which rests within the sound discretion of the trial court,* whose decision will be disturbed only for a manifest abuse thereof." (Citations omitted.) (Emphasis supplied.)

There is a strong presumption that the alleged evidence might have been discovered in time to use at trial. *Cobler* v. *Prudential Life Insurance Co.* (1941), 108 Ind. App. 641, 31 N.E.2d 678; *Schick* v. *Blakesley* (1923), 80 Ind. App. 253, 134 N.E.2d 498; *Morrison* v. *Carey* (1891), 129 Ind. 277, 28 N.E. 697.

Diana failed to rebut this presumption. Scrutiny of the opinion letter and supporting affidavits could reasonably lead the trial court to believe that the alleged "evidence" was not "newly *discovered*." While Dr. Merck's opinion letter was written several months after the trial, it was based on information supplied to him by Diana and others concerning events occurring prior to trial. There is a reasonable inference that, with diligence, such a letter, or the information it represented, could have been procured by Diana in time for trial. *See, Dwyer* v. *McClean* (1961), 133 Ind. App. 454, 175 N.E.2d 50.

Diana appears to have been tardy in submitting Dr. Merck's letter. Again, the trial court did not err.

The decree of the trial court is affirmed.

Sullivan and White, JJ., concur.

NOTE.—Reported at 304 N.E.2d 536.