In re the MARRIAGE OF Bruce B. Myers, Appellant-Petitioner,

and

Laura J. MYERS, Appellee-Respondent.

No. 3–578 A 134.

Court of Appeals of Indiana, Third District.

April 25, 1979.

Rehearing Denied June 7, 1979.

awarding custody of their son, Keith Allen Myers, to Laura Myers. Bruce Myers appeals the grant of custody.[1] We hold that the trial court abused its discretion when it acted under a presumption that the mother should have custody of a child upon dissolution of marriage.

At the end of 1974, Bruce and Laura Myers agreed their marriage was irretrievably broken. They agreed that Bruce would file a petition seeking dissolution of their marriage and that he would retain custody of Keith, born April 15, 1973. Bruce filed the petition on December 31, 1974. Hearings were held on five occasions extending over nineteen and one-half months. On November 2, 1977, each side rested. On December 13, 1977, the court entered judgment awarding custody of Keith to Laura.

Bruce filed a motion to correct errors which was denied. Attached to the motion was the sworn affidavit of Thomas C. Sopko, the attorney who represented Bruce at the hearings relating to the dissolution proceeding. Sopko indicated (referring to an attached exhibit) that on November 4, 1977, the court notified the attorneys of its intended disposition of the case, including its decision to award custody of Keith to Laura. On November 7, the next regularly scheduled court date, Sopko conferred with the trial judge, the Honorable William Hosinski. In his affidavit, Sopko averred:

"10. That during the course of said conversation the undersigned advised the Judge of the undersigned's great surprise and concern regarding the Judge's decision on the matter of custody of the one minor child of the parties.

"11. That during the course of said conversation, the Judge, indicated to the undersigned that the only testimony that the Court was actually concerned with was the testimony of the two (2) psychiatrists who testified on the last day of the series of the aforementioned hearings.

"12. That additionally, the Judge also indicated to the undersigned that while the Judge was familiar with the present

Steven L. Artusi, Robert F. Gonderman, Gonderman Law Offices, South Bend, for appellant-petitioner.

Leonard V. Campanale, Mishawaka, for appellee-respondent.

STATON, Judge.

After hearing evidence, the trial court issued a decree dissolving the marriage of Bruce Myers and Laura Myers and

---

1. In her brief, Laura Myers fails to address any of the issues raised by Bruce Myers on appeal.

status of the Dissolution of Marriage Act which sets forth that there no longer is any presumption favoring the mother in the determination of child custody, that he was of the personal opinion that the mother should be given the benefit of the doubt.

"13. That the Judge went on to further relate that it was his personal opinion that in most instances that the mother is the more appropriate custodial parent.

"14. That thereafter, the undersigned and counsel for the Respondent while endeavoring to work out some mutually agreeable visitation program with the child for the Petitioner, had occasion to have a joint conference in the Chambers of the Honorable William Hosinski during which said conversation the undersigned and counsel for the Respondent inquired as to the opinion of the Court with regard to what would be a reasonable visitation program.

"15. That the undersigned suggested to the Court that since his client had, in fact, had custody of the minor child for approximately three and one-half (3½) years, and at all points in time since the Petition for Dissolution of Marriage was filed back in December of 1974, that the undersigned was of the considered opinion that his client should now enjoy at least the same liberal visitation program that the Court had established during the course of the proceeding for the Respondent-mother when she was the noncustodial parent.

"16. That the Judge indicated to the undersigned that this should necessarily not be the case as in the Judge's opinion it had been 'an abnormal situation' wherein the father had custody of the child during the pendency of these proceedings.

"17. That once again, during the course of this second conversation, the undersigned had additional discussions with the Court concerning a father being awarded custody of his children, and again the Judge indicated that it was his opinion that in most situations, the moth-

er is, and should be, presumed to be a more fit and proper person to be the custodial parent."

Sopko's affidavit was attached to Bruce's motion to correct errors pursuant to Ind. Rules of Procedure, Trial Rule 59(D), which provides as follows:

"When a motion to correct errors is based upon evidence outside the record, the cause must be sustained by affidavits showing the truth thereof served with the motion. The opposing party has fifteen [15] days after service of affidavits in which to serve opposing affidavits and fifteen [15] days after service of the motion in which to file cross-errors' or in which to assert relevant matters relating to the kind of relief to be granted. The period for filing affidavits may be extended for an additional period not exceeding thirty [30] days for good cause shown or by written stipulation."

Laura's attorney, who was present at one of the conversations between Sopko and the trial judge, failed to file any opposing affidavits.

Sopko's affidavit became part of the record of the proceedings under Ind. Rules of Procedure, Appellate Rule 7.2(A)(1). The trial judge certified the transcript and failed to file opposing affidavits, under AP. 7.2(A)(3)(c).

■ Under the rules of our courts, if Sopko's affidavit contained erroneous statements, either Laura or the trial judge could have filed opposing affidavits. Since no opposing affidavits were filed, this court must accept as true the facts averred in Sopko's affidavit filed on behalf of Bruce. *Roberts v. Watson* (1977), Ind.App., 359 N.E.2d 615; *Scharbrough v. State* (1968), 249 Ind. 316, 232 N.E.2d 592. *See also Jackson v. State* (1978), Ind.App., 372 N.E.2d 1242.

Accepting such facts as true, we must determine whether the trial judge's remarks constitute reversible error in regard to the determination of custody.

Indiana statutory law provides as follows:

"the court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent." IC 1971, 31–1–11.5–21(a) (Burns Code Ed., Supp.1977).

The trial judge was bound to render his custody decision in accordance with this provision. However, Judge Hosinski's remarks to Sopko indicated he was unable or unwilling to do so—he personally presumed that in most instances the mother is the more fit and proper custodial parent, and that the mother should be given "the benefit of the doubt."

■ The trial judge's remarks at the close of the evidence provide further support for Bruce's contention that the judge acted with a presumption in favor of the mother. The judge stated:

"There is no doubt in the Court's mind about the competency or the genuine concern of the mother, Laura, or the father to take care of his son. There never was a question with the Court as to if he is a competent person to take care of his child. There has quite candidly been some concern as far as the Court is concerned as to the mother to take care of the child solely because of the evidence that came out of the trial, and you have had the hearing, and we devoted a great number of hours to this case.

"I am certain that neither party here can contend that the Court has handled this in an arbitrary or capricious manner, and we have not done so because of the seriousness of the problems which are involved.

"However, all that necessarily comes down to one question here, and that is the mental capacity of the mother to discharge her duties as a mother, and the Court's decision as to who is the best in the long run for this boy."

The pivotal question the trial judge faced in this case was *not* the mental capacity of Laura coupled with who would be best for the child. The question was simply what custodial determination would serve the best interests of Keith, with no presumption favoring either parent. *Schwartz v. Schwartz* (1976), Ind.App., 351 N.E.2d 900; *Buchanan v. Buchanan* (1971), 256 Ind. 119, 267 N.E.2d 155.

In light of his own remarks, the trial judge seems to have reasoned as follows: In the case before him, he determined, after resolving his own concern as to Laura's competence, that either parent was competent to take care of Keith. However, there remained a question regarding Laura's mental capacity to discharge her maternal duties. Rather than resolving that question in favor of Bruce's receiving custody of Keith, the judge gave Laura the "benefit of the doubt" and awarded her custody of the child. Apparently the judge would have given Bruce custody of Keith only if he had found Laura mentally incapable of caring for Keith.

■ A judge who follows such a process abuses the discretion granted him by statute. To be sure, a judge often faces a difficult choice in determining the custodial situation which would serve the best interests of the child. Where one parent is unfit or unable to care for the child, the choice is clear. However, when either parent is competent to care for his or her child, the judge must choose the better of two alternatives. In doing so, he is charged statutorily with looking only to the best interests of the child. He may not indulge in any presumption favoring either parent. He may not give either parent "the benefit of the doubt."

■ In making a custody determination the court is charged with considering:

"all relevant factors including:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school and community; and

(6) the mental and physical health of all individuals involved."

IC 1971, 31–1–11.5–21(a) (Burns Code Ed., Supp.1977). At the hearings on custody, each parent is responsible for demonstrating his or her fitness, and for introducing evidence that might reflect the other parent's incapacity to serve the child's best interests. The trial court then exercises its discretion to award custody of the child consistent with the child's best interests.

█ Normally this Court will not reverse a custody determination unless a manifest abuse of discretion is shown. *Schwartz v. Schwartz, supra,* 351 N.E.2d 900; *Buchanan v. Buchanan, supra,* 256 Ind. 119, 267 N.E.2d 155. Before a decision will be held to constitute an abuse of discretion, it must be " 'clearly against the logic and effect of the facts and circumstances before the court'." *Schwartz, supra,* 351 N.E.2d at 901; *Shaw v. Shaw* (1973), 159 Ind.App. 33, 304 N.E.2d 536, 539.

After a careful examination of the record, it is apparent to this Court that the trial judge could have rendered his custody decision only because he had acted under the presumption that the mother is the more fit and proper custodial parent. The trial judge abused his discretion by indulging in a statutorily-prohibited presumption and by rendering a custody decision that does not appear to be in the best interests of the child.

The evidence in the present case establishes that Keith was being competently cared for by Bruce and Bruce's parents. The trial judge himself noted in his closing remarks:

"There isn't any concern about his paternal grandmother, Mrs. Myers, who has been doing an excellent job, who according to the testimony was interviewed by the Public Welfare and has done a splendid job of raising Mr. Myers and his two brothers, establishing a reputation in the community for caring for male offspring."

Laura raised not a single question regarding Bruce's capability as a father to Keith. All the evidence shows that Keith had been in a happy, stable home environment for three years while in Bruce's custody.

On the other hand, Laura had a history of mental problems. She had attempted suicide three times, twice after the birth of Keith. She had been hospitalized for the treatment of her mental breakdowns. Two psychiatrists testified at the hearing. Both indicated that she was no longer on medication and was able to function in her present situation. One psychiatrist, who had treated Laura, could not predict whether a psychotic episode would be triggered by future stresses, such as those related to full-time care of a child. The other psychiatrist, who testified to Laura's normalcy, had consulted with her only on three recent occasions and knew nothing about her attempted suicides.

The record contains uncontradicted evidence that Laura is an excellent housekeeper and cook. However, the evidence that she is a good mother is not as unequivocal. Further, at the time of the hearing, Laura had worked at a succession of at least five jobs since her separation from Bruce.[2] She indicated that, if she received custody of Keith, her mother, Mrs. Nemeth, would babysit Keith during working hours. However, Mrs. Nemeth testified that she had never taken care of Keith (except for an hour here or there) and Laura presented no testimony to demonstrate the suitability of such an arrangement.

The record fails to provide support for the trial judge's decision to award custody of Keith to Laura, in the absence of a presumption in her favor.

We find that the trial judge abused his discretion in deciding to award custody of Keith to Laura. The judgment of the trial court is reversed and this cause is remanded with instructions for the court to conduct a hearing on the matter of the custody of Keith, said hearing and the court's decision to comply with the provisions of IC 1971, 31–1–11.5–21.

2. On the other hand, Bruce has steady employment as a mechanical engineer at Bendix Corp.

GARRARD, P. J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I dissent.

The well-settled rule on appeal, apparently ignored by the majority, is that this Court will consider only that evidence most favorable to the judgment, together with all reasonable and logical inferences which may be drawn therefrom. *Cook v. Rosebank Development Corp.* (1978), Ind.App., 376 N.E.2d 1196, at 1199; *Utica Mut. Ins. Co. v. Ueding* (1977), Ind.App., 370 N.E.2d 373, at 376.

Further, that evidence will be viewed with due regard for the opportunity of the trial court to observe the demeanor of witnesses and to form judgments of their credibility. *Schwartz v. Schwartz* (1976), Ind. App., 351 N.E.2d 900, at 901; *Cornwell v. Cornwell* (1940), 108 Ind.App. 350, at 354, 29 N.E.2d 317, at 318.

This Court may neither weigh the evidence nor substitute its judgment for that of the trier of fact, *In Re Marriage of Patus* (1978), Ind.App., 372 N.E.2d 493, at 495, *even though we might have reached a different conclusion had we been the triers of fact. J. I. Case Co. v. Sandefur* (1964), 245 Ind. 213, at 223, 197 N.E.2d 519, at 523.

These principles of review apply to all cases, and those cases involving questions of child custody are no exceptions. *See*, e. g. *Shaw v. Shaw* (1973), 159 Ind.App. 33, 304 N.E.2d 536 (stating presumption in favor of appellee).

The evidence most favorable to Laura, as appellee, is as follows:

Two psychiatrists testified that, although Laura had previously experienced some problems requiring psychiatric treatment, she was now capable of caring for her son, Keith. Further, the difficulties which she had experienced occurred a number of years ago, and she had required no treatment for about two and a half years prior to trial.

Laura testified that she was employed on a full-time basis and was financially able to maintain her own household without outside assistance. During her working hours, Keith would be cared for by her mother. Laura further stated that she was living in a two-bedroom apartment where Keith would have his own bedroom; whereas, if Bruce were to have custody, Keith would be required to stay in his paternal grandparents' bedroom.

Two witnesses testified to Laura's fitness as a parent. One observed that Laura took great pride in the care of Keith and that the boy was well-behaved when in the company of his mother. The other noted that Laura and Keith got along very well and that Keith was always neat and clean. Both concluded that Laura was a fit and proper person to have permanent custody of her son.

The testimony of other witnesses indicated that Bruce had exhibited signs of a bad temperament on a number of occasions, including one incident when he struck Laura during her pregnancy and two others when he damaged household fixtures by striking them with his fist.

In view of this evidence I cannot agree that the decision below was " 'clearly against the logic and effect of the facts and circumstances before the court,' " thus requiring a reversal of the judgment. *See*: *Schwartz v. Schwartz, supra*; *Shaw v. Shaw, supra*; *Buchanan v. Buchanan* (1971), 256 Ind. 119, 267 N.E.2d 155. Where, as here, the record contains ample evidence to support the trial court's award of custody, no abuse of discretion will be found. *Schwartz, supra*, 351 N.E.2d at 901–902.

That the trial judge may have made casual, off-the-record remarks which *might be construed* as an indication that he considered an improper presumption regarding custody is of absolutely no moment in this case. The conversations reported by attorney Sopko's affidavit do little more than relate the observations made by Judge Hosinski in the course of his many years of hearing cases such as these. In my view, the use of those off-hand, off-the-record observations to impeach the judgment falls

short of being a necessary exercise in advocacy. More importantly, the fact that the judgment is sustainable as a matter of law renders any discussion of such matters irrelevant.

The decision reached today by the majority can only encourage a multitude of appeals based on events occurring outside the courtroom, thereby discouraging open communication between the bench and bar. The wisdom of avoiding such a result is self-evident.

I would therefore affirm the judgment below.