Sandy L. WHITE, Appellant (Petitioner),

v.

Daniel G. WHITE, Appellee (Respondent).

No. 49A02–9406–CV–352.

Court of Appeals of Indiana.

Aug. 31, 1995.

Audrey K. Grossman, Treacy, Grossman & Sullivan, Indianapolis, for appellant.

Nancy L. Cross, Miroff, Cross, Ruppert & Klineman, Indianapolis, for appellee.

## OPINION

SULLIVAN, Judge.

Sandy L. White (Sandy) appeals the trial court's decree dissolving her marriage to Daniel G. White (Daniel) and awarding custody of the couple's two minor children to Daniel.

We affirm.

The sole issue Sandy presents for our review is whether the trial court committed reversible error when it refused to allow her to call the parties' ten-year-old son as a witness at the dissolution hearing.[1]

On April 25, 1994, the trial court entered a Decree of Dissolution dissolving Daniel and Sandy's marriage. The decree awarded Daniel custody of the couple's two minor children. The facts most favorable to the trial court's judgment disclose that Daniel and Sandy married in 1982. Two children were born of the marriage, a son, Joshua, and a daughter, Jessica. On April 30, 1993, Sandy filed a dissolution petition. The trial court held a final contested hearing on the dissolution petition on January 13, 1994, at which both Sandy and Daniel sought custody. At the time of the hearing, Joshua was ten years of age, and Jessica was five. Before the submission of evidence at the hearing, Sandy's counsel requested that the trial court conduct an in-camera interview with the couple's two children before it made a custody decision. The trial court took the matter under advisement pending submission of all evidence.

Sandy called Daniel as her first witness, and he testified, among other things, that Sandy had a bad temper. The next witness was Dr. Richard L. Lawlor, a clinical psychologist who conducted a custody evaluation.[2] Dr. Lawlor was Daniel's witness, but

1. Daniel presents an additional issue for our consideration: whether we should assess damages against Sandy for initiating a frivolous appeal.

2. Daniel originally requested that Dr. John Ehrmann perform the custody evaluation. Sandy objected to his selection and instead requested that the parties utilize the services of Dr. Lawlor.

the parties agreed to allow him to testify out of order during Sandy's case-in-chief. Dr. Lawlor testified at trial that it would be in the best interests of the children for the trial court to award sole custody to Daniel because Sandy was engaging in a pattern of behavior known as parental alienation syndrome, a series of actions and "maneuvers" by which she would attempt to exclude Daniel and to denigrate him in the eyes of the children.[3] Dr. Lawlor also stated that Sandy displayed excessive anger and hostility toward Daniel.

Daniel's mother, Dorothy White (Dorothy), and his sister-in-law, Elizabeth White (Elizabeth), both testified that Sandy displayed anger and hostility. They also each testified that they saw Sandy kick Joshua.[4] Near the end of Daniel's presentation of evidence, the court informed counsel that it would have to resume the hearing at a later date.

On February 11, 1994, four days before the date on which the hearing was set to resume, the trial court denied Sandy's request for an in-camera interview. The hearing continued on February 15, 1994,[5] at which time Daniel testified and then rested his case. Sandy presented two rebuttal witnesses, both of whom testified that they had never seen Sandy become physically abusive toward her children, and that she would provide a suitable environment for the children. Next, Sandy's trial counsel attempted to call Joshua as a rebuttal witness. Daniel's counsel

objected to "exposing [Joshua] to a Court Room", contending that testifying would have a damaging emotional effect on him. Record at 534. The trial court sustained Daniel's objection and refused to allow Sandy to call Joshua as a witness, stating, in part, as follows:

"It is the position of this Court and has been the position of this Court since day one that children of the parties are not to be called as witnesses. I will allow children of the parties to be called as witnesses if the issue is emancipation for the limited purpose of them testifying as to whether they meet the qualifications of the statute. I will allow children of the parties to be called as witnesses for the limited purpose of them testifying as to advanced educational expenses.... I think that it is abundantly clear, based on [I.C. 31–1–11.5–21(d)] and based on case law, that it is within this Court's discretion to exclude children as witnesses." Record at 542–43.

Sandy then testified as a rebuttal witness and specifically denied allegations that she ever kicked Joshua as Elizabeth and Dorothy White had testified.

On February 25, 1994, the trial court entered findings of fact and an order awarding Daniel custody of the children. The trial court's findings formed the basis for the dissolution decree, which awarded Daniel sole custody subject to Sandy's guideline visitation.[6]

3. Daniel reported that Sandy consistently was uncooperative and inflexible with respect to his access to the children. He also said that Sandy consistently acted in an angry and acrimonious manner toward him in the presence of the children. Daniel believed that his relationship with the children was becoming increasingly strained and remote as a result of these activities.

Dr. Lawlor initially made alternative custody recommendations, one recommending sole custody with Daniel and one recommending sole custody with Sandy subject to Daniel's rather liberal visitation. Dr. Lawlor testified that he arrived at alternative recommendations because he initially had believed Daniel was somewhat uncertain about seeking custody. However, Dr. Lawlor testified as he did at trial because Daniel's counsel advised him that Daniel was indeed interested in having full custody of the children.

4. In his brief, Daniel maintains that Dorothy and Elizabeth refer to two separate incidents. It is unclear whether they refer to one incident which

they both allegedly witnessed or whether they refer to two distinct incidents.

5. The correct date on which the hearing resumed is not entirely clear. In her brief, Sandy contends that the hearing occurred on February 13, 1994, while Daniel submits that it was held on February 15, 1994. The record only adds to the confusion because the first page of the hearing transcript indicates that the hearing took place on January 13 and February 15, 1994, but the point at which the hearing resumes after concluding on January 13 is dated February 17, 1994. For purposes of this appeal, we assume that the second hearing occurred on February 15, 1994.

6. The decree reads in relevant part as follows:

"Daniel ... is a fit and proper person to have custody of said children and that it is in the children's best interest that [he] be the person

At custody hearings, a parent seeking custody bears the burden to demonstrate his or her fitness, and may submit evidence which reflects the other parent's incapacity to serve the child's best interests. The trial court then exercises its discretion to award custody of the child consistent with the child's best interests. *E.g., In re Marriage of Myers* (1979) 3d Dist., 180 Ind.App. 284, 387 N.E.2d 1360, 1364. This court generally will not reverse a custody determination absent a manifest abuse of discretion. *See Buchanan v. Buchanan* (1971) 256 Ind. 119, 267 N.E.2d 155, 158; *Myers, supra* at 1364; *Schwartz v. Schwartz* (1976) 1st Dist., 170 Ind.App. 241, 351 N.E.2d 900, 901. A trial judge abuses his or her discretion if he or she renders a decision that is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences to be drawn therefrom. *Prenatt v. Stevens* (1992) 4th Dist. Ind.App., 598 N.E.2d 616, 619; *Walker v. Walker* (1989) 4th Dist. Ind.App., 539 N.E.2d 509, 510. *See also Myers, supra,* 387 N.E.2d at 1364; *Schwartz, supra* at 901; *Shaw v. Shaw* (1973) 2d Dist., 159 Ind.App. 33, 304 N.E.2d 536, 539.

By refusing to allow Joshua to testify in any manner during the dissolution proceedings, the trial court essentially made two determinations. First, it refused to allow Joshua to rebut Dorothy and Elizabeth White's allegations that Sandy kicked him on a specific occasion or occasions. In addition, the trial court also foreclosed Sandy from eliciting any testimony regarding Joshua's custody preference. We therefore review each of these decisions.

## I. Exclusion of Child's Rebuttal Testimony

Sandy contends that the trial court committed reversible error in not allowing Joshua to rebut Dr. Lawlor's allegations that she restricted the children's access to Daniel, as well as the allegations that Sandy kicked him. Daniel responds that the trial court did not err because I.C. 31-1-11.5-21(d) [7] grants a trial judge discretion not to allow a child to testify at dissolution proceedings. Alternatively, Daniel contends that even if the trial court committed error, it was harmless because other evidence in the record addressed the same points that Joshua would have made on the stand. Daniel specifically draws our attention to the fact that Sandy testified on rebuttal and denied the allegations that Dorothy and Elizabeth White had made.

Because Joshua was ten years of age at the time of the hearing, Indiana law does not presume that he was incompetent to testify.[8] We mention the issue of Joshua's competency because Sandy devotes a significant portion of her briefs to arguing that the trial judge could not automatically presume Joshua incompetent. We agree. In doing so, however, we note that the trial judge's reluctance to allow Joshua to testify does not appear to arise because of a determination or even a suspicion that Joshua was incapable of understanding the nature and significance of an oath. Rather, it appears that the trial judge was more concerned about the emotional toll on Joshua which testifying in his parents' dissolution proceeding would exact. Nevertheless, while the trial judge's motives were no doubt admirable in trying to shield Joshua from the dissolution and custody pro-

to have care and custody, subject to the right of [Sandy] to visitation as set forth herein below.... [Sandy] shall have visitation with the minor children consistent with the Marion County Visitation Guidelines.... As a condition of [Sandy's] continued visitation, she shall participate in on-going counselling.... Sandy ... shall pay support for the benefit of the parties' minor children in the sum of $119.00 per week." Record at 125-26.

7. *See* I.C. 31-1-11.5-21(d) (Burns Code Ed.Repl. 1994).

8. Rule 601 of the Indiana Rules of Evidence presumes that "[e]very person is competent to be a witness except as otherwise provided in these rules or by act of the Indiana General Assembly." Further, I.C. 34-1-14-4 provides that all persons are competent witnesses in a civil action or proceeding, whether parties to, or interested in, the suit, except as provided by statute. Before its amendment in 1990, I.C. 34-1-14-5 presumed that a child under age ten was incompetent to testify unless the trial court was satisfied that the child understood the nature and the obligation of an oath. In 1990, our legislature amended I.C. 34-1-14-5, deleting the reference to children under age ten. Joshua was ten years of age at the time of the hearing. Therefore, even under Indiana law before 1990, the trial court could not presume him incompetent.

ceedings, we must agree that he erred in doing so with regard to certain rebuttal testimony.

The facts here are similar to those presented in *Bowman v. Bowman* (1948) 118 Ind.App. 137, 77 N.E.2d 900. *Bowman* involved the proffered testimony of an eleven-year-old child of the parties to a dissolution proceeding whose father offered her as a witness at those proceedings. After the girl gave her age and stated that she was a child of the parties, her mother's attorney objected to any " 'further use' " of her testimony due to her age and the "nature of the case." *Id.* 77 N.E.2d at 901. The trial court sustained the objection and refused to allow the child to testify further. Upon appeal, the *Bowman* court reversed, first noting that children over ten years of age are competent witnesses. *Id.* The court then stated that it knew of "no authority vested in the trial court" which would allow the court to exclude the child's testimony in such a situation. *Id.*

■ Here, the trial judge determined that I.C. 31-1-11.5-21(d) as well as case law[9] placed within his discretion whether to exclude children of the parties as witnesses in dissolution proceedings. We disagree with the trial judge's interpretation of I.C. 31-1-11.5-21(d). I.C. 31-1-11.5-21 addresses child custody orders. Section (a) provides that a trial court "shall determine custody and enter a custody order in accordance with the best interests of the child" and that the court "shall consider all relevant factors" including those which the statute specifies.[10] Section (d) provides as follows:

"The court may interview the child in chambers to ascertain the child's wishes. The court may permit counsel to be present at the interview, in which event a record may be made of the interview and the same may be made part of the record for purposes of appeal."

Section (d) is a provision which allows a trial judge to interview minor children in chambers to ascertain their views regarding, for example, a custody preference. The in-camera interview allows the trial judge an alternative vehicle for ascertaining the information which Section (a) delineates without placing the children in the middle of an adversarial, open-court custody battle. *See Truden v. Jacquay* (1985) 3d Dist. Ind.App., 480 N.E.2d 974, 979.

■ Contrary to Daniel's assertions, Section (d) merely provides an option for, and governs the conduct of, in-camera interviews. Indeed, a trial judge is vested with rather broad discretion in conducting an interview should the judge decide to hold such an interview pursuant to Section (d). For example, a trial judge may, in his or her discretion, determine whether counsel should be present and whether or not to make a record of the interview. We discern no legislative intent by the creation of such a discretionary in-camera interview process that such discretion carries over into the broader and more general area of testimonial evidence. We conclude, therefore, that Section (d) does not afford a trial judge discretion in determining whether an otherwise competent child may

---

**9.** The record discloses that the case law to which the trial judge referred is *Truden v. Jacquay* (1985) 3d Dist.Ind.App., 480 N.E.2d 974, and *In re Marriage of Saunders* (1986) 1st Dist.Ind.App., 496 N.E.2d 419. After briefly explaining the two cases, the judge concluded as follows:

"I infer from these decisions that it is within this Court's discretion to allow or disallow evidence and testimony from a child of the parties. I think that [I.C. 31-1-11.5-21(d)] provides for in-camera interview in the Court's discretion as to whether the Court wishes to take evidence as such from the children by interviewing them on an in-camera basis and it is up to the Court to determine whether or not to do that in chambers.... The Court exercises its' [sic] discretion against allowing the child to be called as a witness in this cause of

action. The Respondent's objection to the calling of this witness is sustained. Joshua White shall not testify in this cause of action." Record at 545-46.

**10.** The relevant factors the statute enumerates are as follows:

"(1) The age and sex of the child;
(2) The wishes of the child's parent or parents;
(3) The wishes of the child ...;
(4) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;
(5) The child's adjustment to his home, school, and community; and
(6) The mental and physical health of all individuals involved."

testify in open court during dissolution proceedings.

◼ While it may be good policy to exclude some otherwise competent persons, including children, from the adversarial and confrontational setting, articulation of such policy should be left to the legislature. The present rules of evidence clearly indicate that a party in civil litigation is free to call and to obtain the testimony of competent witnesses. The trial court lacks discretion to accept or reject those witnesses.[11]

◼ We next examine the nature of Joshua's proffered testimony. After the trial judge ruled that Joshua could not testify at the hearing, Sandy's counsel made an offer to prove, in which it was stated that Joshua would have, among other things,[12] understood the nature of an oath and would have testified that no incidents of kicking as described by Dorothy and Elizabeth White ever occurred. Rebuttal evidence is evidence which tends to explain, contradict, or disprove an adversary's evidence. *McCullough v. Archbold Ladder Co.* (1993) Ind., 605 N.E.2d 175, 180; *Coffman v. Austgen's Electric, Inc.* (1982) 3d Dist. Ind.App., 437 N.E.2d 1003, 1005. Thus, any testimony from Joshua indicating that Sandy did not kick him as Dorothy and Elizabeth White earlier testified is proper rebuttal testimony, and the trial judge erred in precluding Joshua from rebutting such allegations.[13]

---

**11.** We note that Rule 403 of the Indiana Rules of Evidence permits the trial court to exclude certain evidence from a competent witness if the probative value of that evidence is outweighed by, for example, prejudice or trauma to the witness. Regardless, exclusion of a witness and exclusion of certain evidence from a witness are two different things.

**12.** The offer to prove also indicated that Joshua would testify that he preferred to live with his mother and that Daniel punishes Joshua's sister, Jessica, when she says that she misses her mother during visitation. As we will discuss in Part II, *infra*, such testimony is not proper rebuttal.

**13.** Sandy argues in her brief that through Joshua's testimony, she might also have "had an opportunity to counter the allegations leveled by Dr. Lawlor that [she] somehow attempted to restrict the children's access to their father." Appellant's Brief at 17. That may well be so, but Sandy's offer of proof reveals that her trial counsel did not seek to elicit such testimony from Joshua. Citing *Bowman, supra*, 77 N.E.2d 900, and *State v. Hamer* (1936) 211 Ind. 570, 199 N.E. 589, Sandy maintains that the error is nevertheless preserved because she need not have made an offer of proof in this case. We disagree.

Older Indiana cases have held that when an objection "is to the right of the witness to testify at all, the party introducing that witness need not state what he expects to prove by him, as the question for the court to pass upon in such a case is not as to the competency of his testimony, but as to the competency of the witness himself." *Sullivan v. Sullivan* (1893) 6 Ind.App. 65, 32 N.E. 1132, 1133; *see also Hamer, supra*, 199 N.E. at 593–94; *Bowman, supra*, 77 N.E.2d at 901. Courts have held likewise in cases where the so-called "dead man's statute" has precluded witnesses from testifying at trial. *See, e.g., Paullus v. Yarnelle* (1994) 4th Dist.Ind.App., 633 N.E.2d 304, 308, *trans. denied; Senff v. Estate of Levi* (1987) 1st Dist.Ind.App., 515 N.E.2d 556, 559, *trans. denied; Satterthwaite v. Satterthwaite's Estate* (1981) 4th Dist.Ind.App., 420 N.E.2d 287, 292.

Nevertheless, recent decisions have seemingly required an offer of proof even when the trial court has found a witness incompetent or when it has otherwise prevented a witness from giving any testimony. *E.g., Wiseheart v. State* (1986) Ind., 491 N.E.2d 985, 991 (witness precluded from offering any testimony because of discovery violation); *Tyson v. State* (1993) 2d Dist.Ind. App., 619 N.E.2d 276, 281, *trans. denied, denial of post conv. relief Aff'd in Part, Rev'd in Part* (1993) 2d Dist.Ind.App., 626 N.E.2d 482, *cert. denied* (1994) —— U.S. ——, 114 S.Ct. 1216, 127 L.Ed.2d 562 (witnesses precluded from offering any testimony). Most recently in *Donaldson v. Indianapolis Public Transportation Corp.* (1994) 4th Dist.Ind.App., 632 N.E.2d 1167, 1170, the trial court excluded the testimony of a purported expert witness after determining that the witness did not qualify as an expert on National Safety Council (NSC) standards and their applicability to the accident at issue. Upon appeal, Donaldson contended that the trial court committed error when it precluded the witness from testifying about the NSC rules. There, the court noted: "During direct examination, when the trial court rules that a witness may not testify, the proponent of the excluded testimony must make an offer of proof to preserve the ruling for appellate review. [Citations omitted.] 'An offer of proof provides the appellate court with the scope and effect of the area of inquiry and the proposed answers, in order that it may consider whether the trial court's ruling excluding the evidence was proper.' *Tyson v. State* (1993) Ind.App., 619 N.E.2d 276, 281, *trans. denied*. Thus, 'the offer of proof must demonstrate the substance, purpose, relevancy, and materiality of the excluded evidence in order to enable the appellate court to deter-

We turn now to Daniel's argument that the error was harmless. If a trial court erroneously excludes evidence, we will reverse only if the error relates to a material matter or is of such character as to affect the "substantial rights of the parties." Ind. Trial Rule 61; *see also Manns v. State, Dep't of Highways* (1989) Ind., 541 N.E.2d 929, 936; *Dynes v. Dynes* (1994) 2d Dist. Ind.App., 637 N.E.2d 1321, 1324, *trans. denied; Indiana Insurance Co. v. Plummer Power Mower & Tool Rental, Inc.* (1992) 4th Dist.Ind.App., 590 N.E.2d 1085, 1088.[14] We have likewise recognized that error in the exclusion of evidence is not grounds for reversal unless our refusal to reverse would be "inconsistent with substantial justice." T.R. 61; *Indiana & Michigan Elec. Co. v. Hurm* (1981) 1st Dist. Ind.App., 422 N.E.2d 371, 376, *reh'g denied.* We are satisfied that the error here does not mandate reversal.

We will deem harmless a trial court's erroneous ruling if the record otherwise indicates that the trial court clearly would have entered the same judgment regardless of the error. *See Vollmar by Vollmar v. Rupright* (1988) 2d Dist.Ind.App., 517 N.E.2d 1240; *Miller v. Faulkner* (1987) 3d Dist.Ind.App., 506 N.E.2d 52. Here, even if the trial court had allowed Joshua to rebut the allegations that Sandy had kicked him, such testimony, if examined in conjunction with the other evidence of record, leads unerringly to the conclusion that the trial court did not err in determining that sole custody with Daniel was in the best interests of the children.

In this connection, and as earlier noted, Dr. Lawlor testified that Sandy was engaging in a pattern of behavior he described as parental alienation syndrome. Furthermore, a significant portion of Daniel's evidence revealed that Sandy had a volatile temper and that she displayed socially inappropriate behavior. Testimony also revealed concern over the fact that the five-year-old daughter,

mine on appeal whether the exclusion was proper.' *Id.*"

*Donaldson* involved exclusion of a witness offered for direct examination. Nevertheless, its rationale is equally if not more appropriate in a situation, such as in the instant case, in which a proponent offers the excluded testimony during the rebuttal phase of the proceeding. When dealing with rebuttal testimony, it is imperative that we, as an appellate tribunal, know what the proponent expects to prove by a particular witness so that we may be able to discern whether the evidence offered upon rebuttal is proper at that stage of the proceeding. Specifically, we may need to determine whether the proffered testimony is prejudicial or cumulative. That was not at issue in *Sullivan, supra, Hamer, supra,* and *Satterthwaite, supra.* In those cases, the only real issue was the competency of the witnesses, not the competency of their proffered testimony. However, when a proponent offers a witness as a rebuttal witness, issues may arise not only with regard to the witness' competency, but often, as is the case here, with regard to the nature of the testimony itself. This is so because, as mentioned above, an appellate court must be able to determine whether such testimony is properly within the scope of rebuttal evidence. *See State ex rel. Repp v. Cox* (1900) 155 Ind. 593, 596, 58 N.E. 849, 850; *see also* Robert L. Miller, Indiana Evidence, 12 Indiana Practice § 103.110 (West 1984). Without an offer of proof on record, we are unable to do so. Accordingly, an offer of proof is necessary.

In the case at bar, Sandy's trial counsel did not state that Joshua's proffered testimony would rebut any of Dr. Lawlor's conclusions regarding parental alienation syndrome or any of the facts underlying his custody recommendation, such as whether Sandy restricted Joshua's access to Daniel or whether Daniel may have punished Jessica on occasion. Upon appeal, we will deem waived an issue that was neither presented nor established at trial. *See, e.g., Franklin Bank and Trust Co. v. Mithoefer* (1990) Ind., 563 N.E.2d 551, 553; *Allstate v. United Farm Bureau Mutual Insurance Co.* (1993) 4th Dist.Ind.App., 618 N.E.2d 31, 33; *Blairex Laboratories, Inc. v. Clobes* (1992) 1st Dist.Ind.App., 599 N.E.2d 233, 237, *trans. denied; Williams v. City of Indianapolis Dep't of Public Works* (1990) 1st Dist.Ind.App., 558 N.E.2d 884, 887, *trans. denied; Kline v. Business Press, Inc.* (1987) 4th Dist.Ind.App., 516 N.E.2d 88, 90, *trans. denied; Allen v. Scherer* (1983) 1st Dist.Ind.App., 452 N.E.2d 1031, 1033; *Green v. Green* (1983) 4th Dist.Ind.App., 447 N.E.2d 605, 610, *trans. denied.* In this case, Sandy failed to preserve an argument concerning Joshua's ability to counter Dr. Lawlor's testimony because she did not make such assertions in her offer of proof at trial. Accordingly, when considering what portion of Joshua's proffered testimony was a proper subject for rebuttal, we will not consider the fact that Joshua might have had the opportunity to counter Dr. Lawlor's conclusion or the facts upon which he based that conclusion.

**14.** *See also Posey County v. Chamness* (1982) 1st Dist.Ind.App., 438 N.E.2d 1041, 1048; *Cornett v. Cornett* (1980) 1st Dist.Ind.App., 412 N.E.2d 1232, 1236, *reh'g denied; Lovko v. Lovko* (1978) 2d Dist., 179 Ind.App. 1, 384 N.E.2d 166, 173,

Jessica, had yet to be fully potty-trained while under Sandy's primary supervision. Further, we are cognizant of the comparative credence afforded to both the doctor's testimony and that of Dorothy and Elizabeth White, especially in light of the fact that Joshua had been living with Sandy at the time of trial and was particularly susceptible to undue pressure, wittingly exerted or not, to favor Sandy in his testimony. Accordingly, we agree that a refusal to reverse here because Joshua was not permitted to rebut Daniel's allegations of abuse is not inconsistent with substantial justice. The error does not mandate reversal.

## II. Exclusion of Child's Testimony Regarding Custody Preference

The record reveals that Sandy sought not only to use Joshua's testimony to rebut allegations that she kicked him, but that she also desired to elicit testimony from Joshua regarding which parent with whom he wished or preferred to live.[15] She did not, however, seek such testimony until the rebuttal phase of the trial. Sandy closed her case-in-chief before the trial court ruled on her in-camera interview request. By the time the hearing resumed some days later, the trial court, by then, had denied the request. Thus, the rebuttal phase of the proceedings was Sandy's last chance, so to speak, to offer such evidence.

As noted above, rebuttal evidence is evidence that tends to explain, contradict or disprove an adversary's evidence. *McCullough, supra,* 605 N.E.2d at 180; *Coffman, supra,* 437 N.E.2d at 1005. Further, trial courts may properly exclude testimony or evidence a proponent offers in rebuttal that he or she should have offered during his or her case-in-chief. *Coffman, supra,* 437 N.E.2d at 1005; *Waugaman v. Gary Methodist Hospital* (1972) 2d Dist., 151 Ind.App. 279, 279 N.E.2d 240, 243; *see also McCullough, supra* at 180; *Carter v. Aetna Life Ins. Co.* (1940) 217 Ind. 282, 292, 27 N.E.2d 75, 78–79. Whether a trial court may exclude such testimony offered for rebuttal is a decision left to the trial judge's sound discretion. Ind.Trial Rule 43(C); *McCullough, supra* at 180; *City of Indianapolis, Dep't of Metropolitan Development v. Heeter* (1976) 1st Dist., 171 Ind.App. 119, 355 N.E.2d 429, 438; *Waugaman, supra,* 279 N.E.2d at 243.[16] A trial judge abuses his discretion if he renders a decision that is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn from those facts and circumstances. *See,*

---

*reh'g denied; Dudley Sports Co. v. Schmitt* (1972) 2d Dist., 151 Ind.App. 217, 279 N.E.2d 266, 278.

15. When Daniel's counsel objected to Joshua's testimony, the following colloquy occurred:

"[Daniel's Counsel]: I think it's important that the Court know what the wishes of the children are, as clearly the statute requires the Court to take that into account in determining who shall have custody, and to this point, there has been no evidence to indicate what the childrens' [sic] wishes are and if that cannot be acquired by the Court through an in-camera interview, then the only alternative is for me to call Joshua and have him testify...."

THE COURT: ... How is it proper rebuttal testimony presenting evidence as to the wishes of the child concerning placement?

[Daniel's Counsel]: With respect to rebuttal, it really isn't, your Honor. Well, I take it back.

THE COURT: Well, if it isn't then why are you calling this child as a rebuttal witness if it's not proper rebuttal testimony? ... [H]ow is this child to testify as to Mrs. White's fitness as a parent? Mr. White's testimony on direct examination in his case in chief was that he had not discussed with the children what their preferences are as to placement....

[Daniel's Counsel]: ... There has been testimony by Mr. White as to the conduct of Mrs. White which would render her a parent who should not have custody and I think Joshua is certainly competent to testify as to some of the allegations that have been made in the testimony of Mr. White and I think that goes to the issues as well as to the wishes of the child. And without that testimony, the Court has no knowledge as to what the wishes of the children would be and the Court without that information can, it would seem to me, not fulfill it's [sic] statutory duty with respect to taking into consideration those wishes. I would also add to that that I had requested at the outset an in-camera interview. The Court deferred ruling upon that until completion of all the evidence and then the Court did rule upon my written motion for an immediately [sic] ruling.

THE COURT: I denied that.

[Daniel's Counsel]: I realize that, which left me then with no alternative [but to call Joshua as a witness.]" Record at 535–38.

16. *See also Stalker v. Breeze* (1917) 186 Ind. 221, 114 N.E. 968; *Stewart v. Smith* (1887) 111 Ind. 526, 13 N.E. 48.

*e.g., Myers v. Myers* (1990) Ind., 560 N.E.2d 39.

 Here, Joshua's proffered testimony regarding his custody preference was an improper subject for rebuttal. At no time during the hearing does the record reveal that either child had expressed a preference for living with one parent as opposed to the other. Thus, Joshua's testimony cannot be gainsaid to explain, contradict or disprove evidence that Daniel previously elicited.

Furthermore, the trial court made it clear that Sandy's in-camera interview request would be taken under advisement "pending submission of *all evidence in this cause.*" Record at 142 (emphasis supplied). Accordingly, Sandy knew that there would not be a ruling upon her in-camera interview request until after both sides had called all witnesses. Thus, she cannot successfully claim that she did not call Joshua because she assumed that the trial court would have conducted an in-camera interview. In addition, the record reveals that both children were present at the courthouse during the hearing sessions, and nothing appears to have prevented Sandy from calling Joshua as a witness during her case-in-chief in an attempt to elicit testimony addressing his custody preference.

 Upon appeal we will not substitute our judgments for those of the trial judge. Matters committed to judicial discretion are those requiring an on-the-spot decision made in light of the trial judge's knowledge, sense of fairness and equity, and the facts and circumstances present in the courtroom. *See McCullough v. Archbold Ladder Co.* (1992) 1st Dist.Ind.App., 587 N.E.2d 158, 162, (Baker, J., dissenting).[17] The record simply does not reveal that the trial judge's decision not to allow Joshua to testify as a rebuttal witness regarding his custody preference is clearly against the logic and effect of the facts and circumstances before him or the reasonable, probable and actual deductions he could draw from those facts and circumstances.

17. The majority opinion was vacated by our Supreme Court upon transfer in *McCullough v.*

## CONCLUSION

The error the trial judge committed in precluding Joshua from rebutting allegations that Sandy kicked him does not mandate reversal. The trial judge did not abuse his discretion in disallowing Joshua to testify on rebuttal regarding his custody preference, which was a matter properly for Sandy's case-in-chief.

Sandy does not present a frivolous appeal. We therefore deny Daniel's request for appellate attorney's fees.

The judgment is affirmed.

FRIEDLANDER and RILEY, JJ., concur.